# DECISIONS

OF THE

# COURT OF APPEALS OF KENTUCKY

## JANUARY TERM, 1908

CASE 1.—ACTION BY ED E. WALKER AND OTHERS AGAINST S. W. HAGER, STATE AUDITOR TO ENJOIN THE COLLECTION OF A LICENSE TAX ON REAL ESTATE AGENTS.—January 23.

## Hager, State Auditor, v. Walker, &c.

Appeal from Kenton Circuit Court.

W. McD'Shaw, Circuit Judge.

Judgment for plaintiff, defendant appeals — Affirmed.

1. Licenses—Business Tax—Revenue.—Act March 15, (Acts 1906, pp. 193, 201, c. 22) art. 12, subd. 4, section 1, requiring real estate agents in cities to pay a license tax, is a revenue measure; the occupation being essentially a harmless one, and not within the police power of the State.
2. Same — Constitutional Provision — Uniformity. — The requirement of Const. section 171, that taxes shall be uniform on all property subject to taxation within the territorial limits of the authority levying the tax, does not directly and specifically apply to license fees, which section 181 authorizes to be levied on franchises, stock used for breeding purposes, trades, occupations, and professions.
3. Taxation—Ad Valorem Tax—Uniformity.—Under Const, section 171, authorizing the imposition of an ad valorem tax on all property in the State for State purposes, and in coun-

ties, cities, towns, and taxing districts for local purposes, and providing that such tax shall be uniform, and sections 172, 174, providing that 'all ' property not exempt shall be assessed at its fair cash value, an ad valorem tax, if for State purposes, must be the same in all parts of the State, and within the particular locality if for local purposes; the Legislature having no power to select, classify, or discriminate in the imposition of such a tax.

4. Licenses — Taxation—Business — Constitutional Provisions.— Const. section 181, authorizing the imposition of license fees on trades, occupations, and professions, confers on the General Assembly power to tax every business and every individual, without reference to the nature of his trade, occupation, or profession, without limit as to amount, except that it be not so unreasonable or arbitrary as to amount to a confiscation of property or a denial of the right to engage in a particular trade, occupation, or profession.

5. Same—Delegation of Authority.—Under Const. section 181, authorizing the taxation of occupations, the General Assembly may grant to counties, towns, cities, and other municipalities the authority to exact license fees within their territory; the discretion being as far-reaching as when exercised by general laws for State purposes.

6. Same—Uniformity.—Cities of the State having been divided by the Constitution into six classes ,each governed by a special set of laws, and such cities being authorized to impose occupation licenses, it is neccessary that the same fees be imposed on persons engaged in the same occupation in cities of different classes, provided the fees imposed on a particular trade, occupation, or profession in any class of cities is uniform, in the sense that the same fee is charged to any person engaged in the particular trade, occupation, or profession that is taxed.

7. Same—Division of Trades.—Under Const. section 181, authorizing the imposition of occupation taxes, it is competent for the Legislature by general laws for State purposes, as well as by general laws delegating the power to municipalities, to divide trades, occupations, and professions into classes, and to impose a different license tax on each class into which the trade occupation, or profession may reasonably be divided.

8. Same—Method of Division.—Such trades may be classified according to their character, as wholesale and retail dealers, and also according to the volume of business done by them.

9. Same.—Under Const. section 181, authorizing the levy of occupation taxes, and section 171, requiring taxes to be uniform. the Legislature is not required, either by general laws for State purposes or general laws for the benefit of municipalities, to impose license fees that may be levied on all trades, occupations, or professions; but any one or more trades, occupations, or professions may be taxed, and others exempted.

10. Same—Uniformity on Particular Trade.—Under Const. section 181, authorizing the imposition of license taxes, and section 171, requiring all ad valorem taxes to be uniform, the Legislature had no power to pass Act March 15, 1906 (Acts 1906, pp. 193, 201, c. 22) art. 12, subd. 4, section 1. imposing an occupation tax on real estate agents varying in amount according to the class of the city in which such real estate agents resided, and exempting all who did not live or do business in such cities and towns.

11. Constitutional Law—Departments of Government—Powers of Taxation—Legislative Department—Infringment by Judiciary. —The exercise of the taxing powers being confined to the legislative department of the government, the court will not interfere with the exercise of legislative discretion in imposing taxes, regardless of amount, if the tax imposed is uniform and not contrary to constitutional provisions.

12. Same—Occupation Tax.—The legislative freedom from control by the judiciary in the imposition of taxes does not extend to taxes imposed on trades, occupations, or professions; the court, as to such taxes, being entitled to determine whether the statute was in violation of the Constitution, though its purpose was the raising of revenue.

M. H. McLEAN, HINES CHANDLER & NORMAN for appellees.

POINTS AND CITATIONS.

1. The provision of the Revenue Act of March 15, 1906, requiring real estate agents in towns and cities to pay certain license fees, imposes a tax and is not merely a police regulation. (Tiedeman's Limitation of Police Power, sec. 101, pp. 273, 278· Bessette v. People, 193 Ill. 334 (56 L. R. A. 588); Royall v. Virginia, 116 U. S. 572; St. Paul v. Treager, 25 Minn. 348; State v. Bean, 91 N. C. 554; Rosenbloom v. State (Neb.); 57 L. R. A. 992; Adams Express Co. v. City of Owensboro, 85 Ky. 265.)

2. The provisions of the present Kentucky Constitution requiring uniformity in taxation are but declaratory of the law as it has always existed in Kentucky. (Holzhauer v. City of Newport, 94 Ky. 396; City of Lexington v. McQuillan's Heirs, 9 Dana, 513; Pearson, etc., v. Zable, etc., 78 Ky. 170.)

3. This court has repeatedly recognized the rule requiring equality and uniformity in taxation as applying to license or occupation taxes. (Bullitt v. City of Paducah, 8 Rep. 870 (3 S. W. 802); Smith, etc., v. City of Louisville, 9 Rep. 779; Rankin, etc., v. City of Henderson, 9 Rep. 861; Simrall & Co. v. City of Covington, 90 Ky. 444; Board of Council of Harrodsburg v. Renfro, etc., 22 Rep. 806; Schuster & Co. v. City of. Louisville, 28 Rep.. 588; Strater Bros. Tobacco Co. v. Commonwealth (Ky.), 25 Rep. 1717; Brown-Forman Co. v. Commonwealth, 30 Rep. 793.)

4. While constitutional provisions as to uniformity of taxation do not require all occupations to be taxe dalike, yet all persons of the same class must be treated alike. (21 Am. & Eng. Enc. of aw, p. 804; 2 Cooley on Taxation, p. 1100; 25 Cyc. p. 606; Ex parte Williams (Texas), 21 L. R. A. 783; Puitt v. Gaston County Commissioners, 94 N. C. 709; State of Vermont v. Harrington, 68 Vt. 622 (34 L. R. A. 100); Singer Mfg. Co. v. Wright, 97 Ga. 114 (35 L. R. A. 497); State v. Willingham (Wyoming), 52 L. R. A. 198.)

5. An occupation tax can not be graduated according to the population o fthe city in which business is carried on, as there is no necessary connection between the population and the amount of business done. (Municipality v. Dubois, 10 La. Ann. 56; Re Lemon, 143 Cal. 558 (65 L. R. A. 946); 25 Cyc. p. 608; Ex parte Marshall, 64 Ala. 266; State v. Doherty, 2 Idaho, 1105 (29 Pac. 855); State v. Ashbrook (Mo.), 48 L. R. A. 265; Wiley v. Owens, 39 Ind. 429; Besette v. People, 193 Ill. 334.)

6. Every tax must be uniform throughout the territory of the authority levying the tax. (Kentucky Constitution, sec. 171; Wiley v. Owens, 39 Ind. 429; Day v. Roberts, 101 Va. 248; Pine Grove Township v. Talcott, 19 Wall. 666; City of St. Louis v. Spiegel, 75 Mo. 145; Board of Council of Harrodsburg v. Renfro, etc., 22 Rep. 806; Gray on Limitations of Taxing Power and Public Indebtedness, sec. 1427; Campbell County, for use, etc., v. Newport & Cincinnati Bridge Co., 23 Rep. 2056; State of North Carolina v. Moore, 113 N. C. 697 (22 L. R. A. 472); Cases explained and distinguished: Mork v. Commonwealth, 6 Bush, 397; State v. Schlier, 3 Heisk. 281; Texas Banking, etc., Co. v. State, 42 Texas, 636; Note to Bacon v. Board of Tax Commissioners (Mich ), 60 L R. A. 349; Osborne v. State, 33 Fla. 162 (25 L. R. A. 120);

Hager State Auditor v. Walker, &c.

State v. Judge Circuit Court, 50 N. J. Law, 585 (1 L. R. A. 86); Lasher v. People, 183 Ill. 226 (47 L. R. A. 802); State v. Carter, 129 N. C. 560 (40 S. E. 11).

7. Even if an occupation tax may be graduated according to the population of the town or city in which the business is carried on, the graduation of a tax according to the class of the city in which the business is carried on is not a graduation according to population, and is arbitrary and unreasonable. (Kentucky Constitution, sec. 156; Kentucky Statutes, secs. 3713, 3715; Act of March 21, 1906, Acts 1906, p. 345.)

8. The graduation of an occupation tax according to population, if permissible at all, must be reasonable, and in no event can any person pursuing the occupation taxed be exempt altogether. (Gray on Limitations of Taxing Power and Public Indebtedness, sec. 1425.)

9. A revenue statute excepting cities and towns of a certain class is a local or special law and, therefore, unconstitutional. (Kentucky Constitution, secs. 59, 60; City of Louisville v. Kuntz, 104 Ky. 584; Gorley v. City of Louisville, 20 Rep. 602; City of Louisville v. Seilbert, 21 Rep. 328; Droege v. McInerney, 27 Rep. 1137; Stone, Auditor v. Wilson, 19 Rep. 126; Winston v. Stone, Auditor, 102 Ky. 423; Murray v. Board of Commissioners (Minn.), 51 L. R. A. 828); Morrison v. Bachert, 112 Pa. 322.)

10. The statute takes effect upon the approval of an authority other than the General Assembly, and is, therefore, unconstitutional. (Kentucky Constitution, sec. 60; Kentucky Statutes, secs. 2761-2, 3052-3, 3287, 3483, 3611-12, 3664-5.)

11. The statute violates the Fourteenth Amendment of the Federal Constitution, in that it denies to real estate agents in towns and cities ,and especially in towns and cities of the first, second, and third classes, the equal protection of the laws. (Giozza v. Tiernan, 148 U. S. 657; Gulf, etc., Railway Co. v. Ellis, 165 U. S. 150; Magoun v. Illinois Trust Savings Bank, 170 U. S. 283; Cotting v. Kansas City Stock Yards, 183 U. S. 79; State v. Chicago, etc., R. Co. (Mo.), 93 S. W. 748.)

N. B. HAYS, Atty. Gen'l and CHAS H. MORRIS for appellant.

The act in question is a general law, and affects each city, or rather the person undertaking to do real estate business, in all of the two classes of cities and towns alike.

The city or town is not delegated with the power to determine whether or not the tax will or will not be imposed. Even if the town is changed as to its classification, in such a manner

as to change the amount of the license tax to be paid by one engaging in the real estate business, such change must of necessity be by the Legislature, and instead of the imposition of the tax being in the people of the city or town, it is in the Legislature, after all. No city, town or court can change its classification. This power alone is in the Legislature. This is well settled in the case of Jernigan v. City of Madisonville, 102 Ky., 313, wherein the court said:

"It will be seen that the power and duty of assigning towns to the different classes, and changing such assignments is conferred alone upon the Legislature, and no grant of power is given the Legislature to delegate the power to make such change or assignment to any tribunal."

"Under the provisions of section 156 of the Kentucky Constitution the power and duty of assigning towns to the different classes, and changing such assignments, is conferred alone upon the Legislature; and any attempt upon the part of the Legislature to delegate such power to the courts or any other tribunal, is void."

So it will be seen that the amount of license tax to be paid for engaging in the real business, can only be changed in two ways: By the action of the Legislature, or the will of the person licensed.

We ask that the law be certified.

OPINION OF THE COURT BY JUDGE CARROLL—Affirming.

This action was brought by the several appellees, who were engaged in carrying on the business of real estate agents in the cities of Covington and Newport, both of which are cities of the second class, and in the city of Ludlow, a city of the fourth class, to enjoin the collection of a license tax imposed upon real estate agents by the revenue act of March 15, 1906. Acts 1906, p. 88, c. 22. Subdivision 4, art. 12, section 1, of this act contains this provision: "Before engaging in any occupation or selling any article named in this subdivision of article 12 of this act, the person desiring to do so shall procure a license and pay the tax

thereon, as follows: * * * On each real estate agent in cities of the first, second and third class, twenty-five dollars; same, in each city or town of the fourth, fifth or sixth classes, ten dollars.''

The validity of this statute is assailed principally upon the ground that, although a State tax, it is not uniform throughout the State, as real estate agents outside of cities and towns are not required to pay any license, and the tax upon agents in cities is graduated by the class of the city in which they do business. The statute in question is a revenue measure This point is admitted by the Attorney General, and there can be no doubt about its correctness. The occupation taxed is essentially a harmless one. It has none of the features requiring police regulation, and there is no reason why the police power should be invoked concerning it, so that, in inquiring into the validity of the statute, we will treat it as enacted for revenue purposes.

The sections of the Constitution that are directly involved in the consideration of the questions before us are section 171, declaring that ''the General Assembly shall provide by law an annual tax, which with other resources shall be sufficient to defray the estimated expenses of the Commonwealth for each fiscal year. Taxes shall be levied and collected for public purposes only. They shall be uniform upon all property subject to taxation within the territorial limits of the authority levying the tax; and all taxes shall be levied and collected by general laws''—and section 181, reading in part: ''The General Assembly may by general laws only provide for the payment of license fees on franchises, stock used for breeding purposes, the various trades, occupations and professions, or a special or excise tax, and may by general laws dele-

gate the power to counties, towns, cities and other
municipal corporations to impose and collect license
fees on stock used for breeding purposes, on fran-
chises, trades, occupations and professions.''

. We do not agree with counsel for appellee that the
direction in section 171 that ''taxes shall be uniform
upon all property subject to taxation within the terri-
torial limits of the authority levying the tax'' applies
directly or specifically to the license fees that may be
levied on franchises, stock used for breeding purposes,
trades, occupations, and professions mentioned in sec-
tion 181. Yet it is entitled to serious consideration
as indicating a purpose that all laws imposing taxes
shall operate in a uniform manner, to the end that no
favoritism can be shown or discrimination be prac-
ticed. Section 171 authorizes the imposition of an
ad valorem tax upon all the property in the State for
State purposes, and in counties, cities, towns, and tax-
ing districts for local purposes. This ad valorem
property tax, whether imposed or levied for State,
county, municipal, or local purposes, must be uniform
within the territory in which it is imposed. If it be
for State purposes, it must be exactly the same in all
parts of the State; and uniformity must exist when it
is authorized to be levied by local authorities for local
purposes. It is very clear that the Legislature has
no power to select, classify, or discriminate in the
imposition of what we may term a property or ad
valorem tax—that is, a tax levied upon all the prop-
erty in the State—as lack of uniformity in this
respect would be a direct violation of section 172, pro-
viding in part that ''all property not exempted from
taxation by this Constitution shall be assessed for
taxation at its fair cash value, estimated at the price
it would bring at a fair voluntary sale,'' as well as of

section 174, providing in part that "all property whether owned by natural persons or corporations shall be taxed in proportion to its value, unless exempted by the Constitution; and all corporate property shall pay the same rate of taxation paid by individual property." We will therefore proceed to inquire whether or not, and to what extent the rule of uniformity applies to the imposition of license fees on franchises, stock used for breeding purposes, trades, occupations, and professions.

The authority to tax under this section is as far-reaching and as sweeping as language could make it. It would be difficult to find three words that cover wider fields of employment than trades, occupations, and professions. Under its authority to tax them the General Assembly has the power and the right to tax every business and every individual in the State—the merchant, trader, and banker; the lawyer, minister, and doctor; the mechanic and farmer. Indeed, it would be difficult to mention a person who has not some trade, occupation, or profession, and, if he has, the authority to tax him is granted, and this without respect to the nature or character of the trade, occupation, or profession, or whether it be humble or great, large or small. Nor does the Constitution undertake to place any limitation upon the amount of tax that may be imposed, although it may be conceded that, if it should be so unreasonable or arbitrary as to amount to a confiscation of property or a denial of the right to engage in a particular trade, occupation or profession, the courts would interpose to protect the class of persons affected from this oppressive burden, on the ground that it was a violation of the principles recognized and established in the Bill of Rights, declaring that all men have "the right of

seeking and pursuing their safety and happiness"
and "the right of acquiring and protecting property."

The General Assembly may also grant to counties,
towns, cities, and other municipal corporations the
authority to exact license fees, and within the terri-
tory affected the discretion is as far-reaching as when
exercised by general laws for State purposes. And
it also seems that, if the power is delegated to those
local subdivisions to impose the taxes authorized by
this section, the local authorities are invested with
the discretion to fix the license fees at any sum, always
subject to the limitation that it must not be unreason-
able or arbitrary. We also think that in each class of
these local subdivisions, as in the first, second, third,
fourth, and fifth class cities and towns, the local
authorities are not required to impose the same
amount of tax. Cities of the first class may, to illus-
trate, charge a license fee to lawyers of $25 a year,
and cities of the second class a license fee of $10;
and so cities of the third class may charge architects
a license fee of $15, and cities of the fourth class a
license fee of $5. And this right to impose different
fees in cities of different classes may be put upon
the ground that the cities and towns of the State are
divided by the Constitution into six classes, each class
being governed by a set of laws applicable alone to
the cities within that class and constituting a separate
and distinct governmental agency with a set of laws
applicable alone to it. But the license fees imposed
upon any particular trade, occupation, or profession
in any class of cities must be uniform in the sense that
the same fee must be charged every person engaged
in the particular trade, occupation, or profession that
is taxed. We doubt if it would be seriously contended
that the governing authorities in cities of the first

class might impose a license tax of $50 upon doctors residing or doing business in one part or locality of the city, and a tax of $25 upon doctors living or doing business in another part or locality. The rule of uniformity in this respect applies equally and alike to every trade, occupation, and profession that is singled out for taxation. We also believe that it is competent for the Legislature under this section by general laws for State purposes, as well as by a general law delegating the power to the municipalities mentioned, to divide trades, occupations, and professions into classes, and to impose a different license fee upon each class that the trade, occupation, or profession may fairly and reasonably be divided into. To illustrate: Dealers in hardware might be divided into wholesale and retail dealers. And trades, occupations, and professions may be further classified according to the volume of business done by them. Nor is the General Assembly, either by general laws for State purposes or general law in aid of or for the benefit of municipalities, required to impose the license fees that may be levied upon all trades, occupations, and professions. Any one or more trades, occupations, or professions may be singled out for taxation, and all the others not thus selected be exempted. It will thus be seen that according to our construction of this section it is susceptible of wide and varying application.

The only remaining question, and the vital one in this case, is whether or not the license fees imposed must be uniform upon the particular trade, occupation, or profession that is singled out for taxation. And, confining our observations to general laws enacted for the purpose of bringing revenue into the State treasury, we mean ''uniform'' in the sense that

precisely the same license fee must be exacted from
every person within the State who is engaged in the
trade, occupation, or profession that is taxed, with-
out reference to whether he lives in a sixth-class town
or a first-class city, or does business in the country
or in a city. We do not believe it was contemplated
by this section that the General Assembly might im-
pose a license fee for State purposes upon blacksmiths
in one county and exempt blacksmiths in another, or
exact a license fee from physicians practicing in one
city and exempt physicians practicing in another, or
to say that the auctioneer who lived in a sixth-class
town should pay a license fee for carrying on his
occupation and the auctioneer who lived outside the
town limits should be exempt. The authority to im-
pose these special taxes does not carry with it the
right of discrimination and exemption in any class
that is dealt with. The language, "The General
Assembly may by general laws only" provide for this
species of revenue, would seem to imply that it was
intended that the application of the law should be
general, operating equally and alike upon every trade,
occupation, and profession that it was designed to
reach. If a few, or any number of persons less than
all, who follow a designated trade, occupation, or pro-
fession may be exempt, while the others are taxed,
the law imposing the tax would not be general, but
special or local, and forbidden by sections 59 and 60
of the Constitution. This construction is in harmony
with the dominant spirit of the Constitution, which
provides for uniformity in almost every subject it
treats of, among which may be noticed the following,
where the idea of uniformity has been carried to its
fullest extent, as in the jurisdiction, number, and
character of courts, as well as the trial of causes; in

everything pertaining to the enactment of laws; the
punishment of crimes; the regulation of elections;
the creation and division of counties; the fees and
compensation of public officers; the establishment,
government, and classification of cities and towns;
the amount of indebtedness that municipalities may
create or incur; the regulation and control of rail-
roads, common carriers, and public corporations gen-
erally. A weighty reason, too, in favor of uniformity,
is the further consideration that it is important that
the representatives of the people in the lawmaking
department of the government shall all be directly
interested in behalf of their constituents in laws in-
volving the subject of taxation. A member of the
Legislature might be willing to vote a tax upon trades,
occupations, and professions in other districts than
his own, not having his attention specially called to
its lack of equality or fairness; and so the matter
might be extended to embrace any number less than a
majority of the members of the Legislature. But, if
the constituents of the member—the people to whom
he is immediately responsible—are to bear their share
of the burden imposed, they would all be interested
in seeing that it was fairly and equally distributed,
and their desires and interests would naturally have
their weight. This restrictive influence is not to be
underestimated in dealing with questions of this
character.

We believe that the fundamental idea of taxation
is that the burdens shall be borne equally and alike
by all persons, and that no one class shall be taxed
for the benefit of another, or one class be discrimi-
nated against to the advantage of another, or an ex-
emption allowed one that is not conceded to another.
If the General Assembly has power to tax real estate

agents living in cities of the first, second, third, fourth, and fifth class, and towns of the sixth class, and to exempt all who do not live or do business in these cities and towns, it has the power, to further select and classify by exempting those who live in towns of the sixth class; and it would be difficult to draw the line between its power to tax and exempt, or to tax in such an unequal manner as that it would be equivalent to gross discrimination, if not exemption.

The argument for that State that as the Constitution has divided the cities and towns into classes, and that therefore the Legislature under this section may charge license fees dependent upon the class of city or town the person taxed lives in, is not in our opinion sound. The cities and towns were divided into classes distinctly for the purpose of dealing with their local affairs. The classification was not intended for any other purpose, or designed to influence or control legislation for State purposes. It would be extending the effects of classification of municipalities far beyond its legitimate meaning to adjudge that the Legislature might make the general law a local one by limiting its operation to certain territory. In the Constitution adopted in 1850, and that remained in effect until the adoption of the present Constitution in 1891, the Legislature was left free from constitutional restraint in the matter of taxation. There was no limitation whatever upon its power. Indeed, it is a curious fact that the word "taxation" is not mentioned in the old Constitution, nor does the word "revenue" appear, except in the section requiring that "all bills for raising revenue shall originate in the House of Representatives." Yet in the early case of City of Lexington v. McQuillan, 9 Dana. 513, 35 Am. Dec. 159, decided in 1840, and under a Con-

stitution that was also silent upon this question, the court laid down the following principles that have been accepted without question as sound from that day to this: "When shall a tax be levied? to what amount? shall it be a capitation or property tax? direct or indirect? ad valorem or specific? and what classes of property are the fittest subjects of taxation?—are all questions wisely confided by our Constitution to the discretion of the legislative department. * * * But in some other respects, and so far as the power of taxation may be effectual without being thus limited, it is, in our judgment, limited by some of the declared ends and principles of the fundamental law. Among these political ends and principles, equality, as far as practicable, and security of property against irresponsible power, are eminently conspicuous in our State Constitution. An exact equalization of the burden of taxation is unattainable and Utopian. But still there are well-defined limits within which the practical equality of the Constitution may be preserved, and which, therefore, should be deemed impassable barriers to legislative power. Taxation may not be universal; but it must be general and uniform. Thus, if a capitation tax be laid, none of the class of persons thus taxed can be constitutionally exempt upon any other ground than that of public service; and, if a tax be laid on land, no appropriated land within the limits of the State can be constitutionally exempted, unless the owner be entitled to such immunity in consequence of public service. The Legislature, in the plenitude of its taxing power, cannot have constitutional authority to exact from one citizen, or even one county, the entire revenue for the whole Commonwealth. * * * And, although there may be a discrimination in the subjects

of taxation, still persons in the same class and property of the same kind must generally be subjected alike to the same common burden. This alone is taxation, according to our notion of constitutional taxation in Kentucky."

In Bullitt v. City of Paducah, 3 S. W. 802, 8 Ky. Law Rep. 870, decided before the present Constitution, the city was authorized by its charter to collect a license upon certain occupations and professions, among them being attorneys at law. In adjudging the right of the Legislature to authorize the imposition of such tax the court said: "It is well settled that a license upon any trade, profession, or calling may be imposed under legislative authority. It is in effect a tax on the profession or calling, and must be levied on all alike in the trade or profession singled out for taxation." In Smith v. City of Louisville, 6 S. W. 911, 9 Ky. Law Rep. 779, in passing on the validity of an ordinance authorizing the imposition of a tax upon vehicles and classifying them according to the number of animals used in their transportation, the court, in sustaining the validity of the ordinance, said: "It operates upon all alike. There is no distinction of persons. Every one using one horse to his vehicle is taxed alike, and so of each class. The tax is uniform as to each subject of the given class." In Rankin v. City of Henderson, 7 S. W. 174, 9 Ky. Law Rep. 861, it was said: "That the Legislature has the right to classify and impose a license tax on trades is well settled, and that such a tax, when imposed, is not required to apply to all kinds of business pursuits is equally certain. Those pursuing like occupations must be taxed in the same manner or in proportion to the amount of business conducted. We perceive, therefore, no valid objection to this legislation, as it

app ies alike to all of the classes to be taxed." In Simrall v. City of Covington, 90 Ky. 444, 12 Ky. Law Rep. 404, 14 S. W. 369, 9 L. R. A. 556, 29 Am. St. Rep. 398, where an ordinance imposing a tax upon insurance agents was before the court, it was said: "In this State we have no constitutional provision as to taxation eo nomine; but it is a settled constitutional rule, declared by oft-repeated decision of this court, that every tax must be certain, universal, and, so far as practicable, equal and uniform. Burdens cannot constitutionally be imposed upon particular individuals, while others of the same class or locality, who have rendered no public service, are exempt." In Schuster v. City of Louisville, 89 S. W. 689, 28 Ky. Law Rep. 588, it was said: "While the municipal legislature may, under the amendment, classify personal property and levy a tax ad valorem on some personal property, and tax other personal property on the basis of the income, licenses, or franchises, the tax must be uniform within the territorial limits of the authority levying the tax; and under the guise of substituting one method of assessment for another the burden which should fall upon all equally must not be shifted so as to throw upon some more of the common burden than their proper share."

The authorities we have cited arose in cases involving taxation for municipal purposes; but they illustrate the rule, that is firmly embodied in the principles of constitutional law that have always obtained in this State, that taxation must be uniform and equal as nearly as it is practicable to make it so, and that, although the Legislature may single out certain species of property, classes of persons, and trades, occupations, and professions, dealing with each class separately, yet the burden upon every person in the

class thus selected must be the same. If it is imposed upon the person, it must be equal and uniform; and so if it is graduated according to the amount of business done. The power to tax according to the volume of business done has been upheld by this court in Strater Bros. Tobacco Co. v. Commonwealth, 117 Ky. 604, 25 Ky. Law Rep. 1717, 78 S. W. 871, and here again the principle of uniformity was applied; the court saying: ''We do not think the tax is lacking in the quality of uniformity. It is the same on each person or corporation which manufactures the same quantity of tobacco. The Legislature had the right to impose a graduated license tax. The larger manufacturer is required to pay more than the smaller one, based upon the value of the product manufactured.'' And so in Brown-Foreman Co. v. Comth., 125 Ky. 402, 101 S. W. 321, 30 Ky. Law Rep. 793, where the tax was levied upon the volume of business done.

In the case before us no account is taken of the amount of business done, nor is it pretended that the lack of uniformity and equality in the tax imposed was made to depend upon the quantity of business transacted by the real estate agents taxed. The General Assembly, doubtless proceeding upon the idea that the real estate agents in large cities transacted a larger business than those engaged in smaller cities, imposed a heavier tax upon them; but this tax was not fixed with reference, so far as the act shows, to the amount of business done. It may, be and probably is, true that some real estate agents in large cities do a larger business than real estate agents in smaller places; but it does not necessarily follow that there are not real estate agents in fourth-class cities who do a larger business than real estate agents in second, or third, or even first class cities.

It might also safely be said that there are many agents who do not live in, or have a place of business in, any city or town, who do a mere profitable business than many agents who have their places of business in cities or towns. The vice in the law is that, in undertaking to single out for taxation the occupation of real estate agents, it not only taxes them in unequal amounts, depending upon the place in the State where they do business, but also exempts entirely other real estate agents, thus plainly discriminating against real estate agents who live or have a place of business in a city or town, in favor of those who do not live and have no place of business in a city or town.

It is insisted for the State that a license fee or tax imposed for State purposes may be graduated alone by the population of the city or county in which such business may be conducted, or by the fact that the person from whom the fee is exacted resides or does business in one city or another, or in this county or that one; but, as we have endeavored to point out, classification cannot be made on these lines. The purpose of this opinion is not to limit or restrict in any respect the power of the Legislature given to it under the section of the Constitution in question, or to deny to it the right to classify, divide, and select, in any reasonable manner it chooses, trades, occupations, or professions for taxation, or to prevent it from exempting entirely any one or more trades, occupations, or professions, but only to declare that, when any trade, occupation, or profession is selected for taxation, the tax levied upon it, or the license fee exacted from persons engaged in it, must be equal and uniform throughout the State, whether the tax be upon the individual or the business.

It is everywhere recognized that it is impossible

to produce exact uniformity of taxation. Absolute equality is unattainable. As said by Justice Miller in Taylor v. Secor, 92 U. S. 575, 23 L. Ed. 663: "Perfect equality and perfect uniformity of taxation, as regards individuals or corporations, or the different classes of property subject to taxation, is a dream unrealized." The nearest attempt to equality in taxation is the income tax, or a tax based upon the amount or volume of business done, or an ad valorem tax upon property, which exacts from every one the same per cent. upon property owned by him. But there should be no two opinions that an act that arbitrarily singles out for taxation a certain class of persons, and exempts some of them altogether, is unfair and unequal. It must be kept in mind that in the consideration of this question we are dealing with a subject that does not fall within the purview of the police power of the State, and is not touched by its comprehensive and yet undefined reach. What we have said has no application to a condition that might arise when this power is invoked as authority for the exaction of a license fee, or the levy of a tax, or the classification or exemption of persons engaged in occupations, pursuits, or business that may fairly and reasonably come within the police power of the State, as places where liquor is sold, or circuses, theaters, or other amusements are carried on.

In considering this case we have not been unmindful that it is everywhere conceded that the power to lay taxes is the highest attribute of sovereignty, the exercise of which is confided alone to the lawmaking department of the government, and that the courts are reluctant to interfere with the discretion vested in the representatives of the people in imposing taxes that are necessary to sustain the government. Espec-

ially is this true of a property or ad valorem tax operating equally and upon all property within the territory affected. The amount of tax that shall be thus imposed, if uniform and not restrained by constitutional provisions, is vested exclusively in the legislative department of the State, and entirely beyond the power of the courts to control. People v. Commissioners of New York City, 67 U. S. 620, 17 L. Ed. 451; Union Pacific R. Co. v. W. S. Penniston, 85 U. S. 5, 21 L. Ed. 787. But this unlimited freedom from judicial control does not extend to taxes imposed upon trades, occupations, or professions. Bells Gap R. Co. v. Pennsylvania, 134 U. S. 232, 10 Sup. Ct. 533, 33 L. Ed. 892; Connolly v. Union Sewer Pipe Co., 184 U. S. 540, 22 Sup. Ct. 431, 46 L. Ed. 679. And the courts, when the question comes to them, have the undisputed right to determine whether or not a legislative act is in violation of the Constitution, although its purpose may be the raising of revenue. Thierman Co. v. Commonwealth, 97 S. W. 366, 30 Ky. Law Rep. 72; Ragland v. Anderson, 125 Ky. 141, 100 S. W. 865, 30 Ky. Law Rep. 1199.

Entertaining the opinion that the act being considered is violative of the Constitution for the reasons stated, the judgment of the lower court so declaring must be affirmed.