STATE OF IOWA, Appellant, v. L. M. OSBORNE et al., Appellees.

CONSTITUTIONAL LAW:  General Operation of Laws—Regulation
1, 3, 5 of   Occupations—Classifications—Transient   Merchant   Act.
The constitutional principle that "*all laws shall be general and
of uniform operation throughout the state*" (Sec. 6, Art. 1,
and Sec. 30, Art. 3, Const.) does not command that a statute
designed to regulate or tax an occupation shall apply to *every*
person engaged in the same general occupation.  Such statute
may provide any *natural* and *reasonable* classification by which
some engaged in the occupation are amenable to the statute,
while others are exempt.  But the Constitution will not tolerate
a manifestly unnatural, arbitrary or unreasonable classifica-
tion.

PRINCIPLE APPLIED:  The Transient Merchant Act (Secs.
700-c to 700-m, inc., Sup. Code, 1913) exacted a bond and license
fee from such merchants and, in default thereof, provided for
criminal prosecutions.  The act was made applicable only:
   (a)  To those who transacted such business within any city
or town,
   (b)  To those who transacted such business in an occupied
or leased building, and
   (c)  To those who had *not* previously conducted a mercantile
business in the county.
   *Held*, all three classifications were clearly arbitrary and un-
reasonable, being founded on no real difference between the occu-
pation taxed and the occupations exempted.

CONSTITUTIONAL LAW:  General Operation of Laws—Arbitrary
2  Classification—Delegation of Power.   The legislature, being
without power to adopt an unnatural, arbitrary and unreason-
able classification in a statute designed to tax an occupation,
is necessarily without the power to so shape the statute that a
taxing official may do that which the legislature cannot do.

PRINCIPLE APPLIED:  (In addition to No. 1.)  The act
was specifically made applicable to "agents"; yet in its exemp-
tion clause, "selling agents in the usual course of business"
were specifically exempted from the operation of the act.  The
statute furnished no standard or guide to determine the distinc-

tion between the agent exempted and the agent not exempted, but such arbitrary determination rested solely with the taxing official. *Held*, such power cannot be constitutionally conferred on any officer or individual.

CONSTITUTIONAL LAW: General Operation of Laws—Regulation 1, 3, 5 of Occupations—Classifications—Transient Merchant Act.

CONSTITUTIONAL LAW: General Operation of Laws—Classifica-
4  tions—Municipal Boundary Lines as Basis. A classification, in a general state-wide taxation statute, not enacted for the benefit of cities and towns, cannot be constitutionally sustained when, thereunder, a certain occupation when carried on within the boundary lines of a city or town is made subject to the statute, but is exempt from the statute if carried on outside such boundary lines.

CONSTITUTIONAL LAW: General Operation of Laws—Regulation 1, 3, 5 of Occupations—Classifications—Transient Merchant Act.

CONSTITUTIONAL LAW: ''Due Process''—Essentials—Notice—
6  Hearing. ''Due process of law'', within the meaning of Sec. 9, Art. 1, Constitution, never means less than *some* prescribed course of legal proceedings in which the person adversely affected shall have an opportunity to be heard and to resist. *Held*, the Transient Merchant Act was violative of this clause of the Constitution.

PRINCIPLE APPLIED: A legislative act purported to tax or regulate the business of transient merchants. ''Complaint'' of a violation of the act could be made to the county auditor. If the dealer claimed he was a permanent merchant, the auditor was required to compel the dealer to do two things, to wit: (1) Give a bond conditioned to pay all claims growing out of the business and to pay the fee of a transient merchant if he did not continue the business one year, and (2) appoint the auditor his agent on whom service of notice of suits might be made. Who might make this ''complaint'' and how was not provided. *No hearing or notice whatever was provided.* *Held*, statute was void.

CONSTITUTIONAL LAW: Police Power—Exercising. Power for
7  Ulterior Purpose—Crushing Competition. An ostensible exercise of the police power, for the evident purpose of destroying a useful business and thereby relieving others from troublesome competition, will be promptly condemned by the courts as unconstitutional. Transient Merchant Act condemned.

CONSTITUTIONAL LAW: Taxation—"Power to Destroy"—Occu-
8   pation Tax—Right to Acquire Property. The undoubted power to
tax harmless occupations does not embrace the power to destroy,
.either directly or indirectly. The inherent and constitutional
right "to acquire, possess and protect property" (Sec. 1, Art. 1,
Const.) must be respected. *Held,* Transient Merchant Act (Sec.
700-i *et seq.,* Sup. Code, 1913) was unconstitutional.

*Appeal from Warren District Court.*—Hon. Lorin N. Hays,
Judge.

Monday, October 4, 1915.

The opinion states the case.—*Affirmed.*

*John R. Howard,* County Attorney, for appellant.

*C. H. E. Boardman* and *H. H. McNeil,* for appellees.

Weaver, J.—The defendants were brought to trial upon
an indictment for a public offense stated or described as
follows:

"That the said L. M. Osborne and W. A. Tuttle, on the
20th day of September, A. D. 1913, in the county aforesaid,
not being resident merchants therein, did unlawfully then
and there engage in, do and transact a temporary or transient
business in the city of Indianola, Iowa, as transient merchants
by selling goods, wares and merchandise therein, to wit,
buggies, on the aforesaid date, and did unlawfully for the
purpose of carrying on such temporary business occupy a
building in the said city of Indianola, Iowa, for the exhibition
and sale of such goods, wares and merchandise, without hav-
ing first obtained a license from the county auditor of Warren
county, Iowa, authorizing them to engage in, do and transact
business as transient merchants therein, contrary to the
statute in such cases made and provided and against the
peace and dignity of the state of Iowa."

The prosecution rested its case upon the following agreed
statement of facts:

"That at the time complained of in the indictment the Marshalltown Buggy Company was a corporation whose principal place of business is Marshalltown, Iowa. That the defendant W. A. Tuttle is vice-president of said corporation and the defendant L. M. Osborne is secretary thereof and that said defendants were acting on behalf of said corporation as herein set out.

"That shortly prior to September 20,1913, the defendant, W. A. Tuttle, on behalf of said corporation, employed one J. F. Schee, of Indianola, Iowa, to clerk a sale of buggies to be held at the Westerly Feed Barn in Indianola, Iowa, and to handle the paper received in payment thereof. That he caused to be inserted in the Indianola Herald, a weekly newspaper published at Indianola, Iowa, in their issue of September 18, 1913, an advertisement stating that the Marshalltown Buggy Company would offer at public sale on Saturday, September 20th, at the Westerly Feed Barn in Indianola, Iowa, two carloads of high grade vehicles. That he rented space in said feed barn for the storage, exhibition and for the sale thereof of said vehicles, said sale to be held on the 20th day of September, 1913. That two carloads of buggies were shipped by the said Marshalltown Buggy Company to themselves at Indianola, Iowa. That the said company paid the freight on said vehicles to Indianola, Iowa, and subsequently paid the Indianola Herald for the aforesaid advertisement.

"That said Marshalltown Buggy Company was not a resident merchant of the city of Indianola at that time, nor on the 20th day of September, 1913, but was at that time a corporation organized under the laws of the state of Iowa with its principal place of business and its factory at Marshalltown, Iowa, and engaged in a permanent and long established business at Marshalltown, Iowa. That on the 20th day of September, 1913, a demand was made by Tom Darnell, county auditor of Warren county, Iowa, upon said defendants that they procure a transient merchant's license before proceeding with said sale. That the defendants had no such

license and procured no license, and that the Marshalltown Buggy Company had no such license and procured no such license. That thereafter on the same day the said defendant, W. A. Tuttle, called upon one Fred Young, a resident dealer in buggies in Indianola, Iowa, and took him to the said Westerly Feed Barn where he inspected the said vehicles exhibited there by the said company. That the defendant L. M. Osborne was present when the said Young inspected the vehicles. That thereafter on the same day the said defendants, acting for the Marshalltown Buggy Company, sold the entire two carloads of buggies there exhibited to the said Fred Young by a certain instrument in writing, being Exhibit D, which is as follows: We hereby sell to F. C. Young, Indianola, Iowa, the twenty-three vehicles now located in Westerly Bros. Feed Barn, Indianola, Iowa, at sixty-five dollars each and two extra sets of buggy wheels at five dollars per set. Total, $1,505.00. Terms cash or bankable note.

"Marshalltown Buggy Company,

"W. A. Tuttle, Vice-President.

"Accepted. F. C. Young—Dated Indianola, Iowa—Sept. 20-13.

"That thereafter, on the same day, the said Young proceeded with said sale as advertised, having first stated at the opening thereof that he had purchased the entire stock of buggies there exhibited by the Marshalltown Buggy Company. That the said defendants assisted in said sale by stating at the opening thereof a history of their company, their sales, and describing the workmanship of said vehicles. That they advised the clerk thereof how to tell and how to keep the stock number of said sale. That at the conclusion of said sale, they advised the clerk as to the amount due the proprietor of said feed barn, which the clerk then paid, and that the auctioneer was then paid one per cent by the clerk as the amount which had been promised by them. That at the conclusion of said sale they went to the harness shop of said Young and there he was credited with the amount of the pro-

ceeds of said sale by the banker who clerked the sale, less the amounts above set out and the clerk's commission and the said banker there certified the check of the said Young for the sum of $1,287.28, which was delivered to said defendants, payable to the Marshalltown Buggy Company."

At the close of the state's case, the defendants moved for a directed verdict of not guilty, on grounds which may be abbreviated as follows:

1. That the evidence offered is insufficient to sustain a conviction; and

2. That the statute, Ch. 62 of the Acts of the Thirty-fifth General Assembly, with a violation of which the defendants are charged, is unconstitutional and void in that (1) it is not of uniform operation and provides for an unreasonable and arbitrary discrimination in its application and enforcement, contrary to the provisions of Sec. 30 of Art. 3 of the Constitution of the state of Iowa; (2) it provides privileges and immunities for certain citizens which it denies to other citizens upon the same or equal terms, and deprives those against whom it is enforced of their liberty and property without due process of law, contrary to the provisions of Secs. 6 and 9 of the Bill of Rights embodied in the state Constitution; and (3) said statute violates the fourteenth amendment to the Constitution of the United States, in that it denies the equal protection of the law to persons prosecuted for its alleged violation.

The trial court sustained the motion, a verdict of not guilty was accordingly directed, and the defendants were discharged. The state appeals.

The statute, the validity of which is thus put in issue, provides in Sec. 1 thereof that it "shall be unlawful for any temporary or transient merchant to engage in, do or transact any business as such within any city or incorporated town without first having obtained a license" therefor.

Sec. 2 makes it the duty of every temporary or transient

merchant desiring to transact business in any county of this state to file an application for license in the county auditor's office, stating his proposed place of business, the kind of business and the time for which he desires the privilege. He shall also pay to the treasurer of the county a license fee of $200, taking duplicate receipts therefor. One of these receipts he must file with the county auditor, together with the bond hereinafter mentioned, and thereupon the auditor will issue the desired license.

Sec. 3 provides that before the license issue, the applicant shall deliver to the auditor a good and sufficient bond with approved sureties in the amount of $1,000, conditioned for "the protection of all persons, firms or corporations who may have claims against the obligor arising out of said business and any such person, firm or corporation may sue thereon in his or its own name." The applicant must also deliver to the auditor, with the bond, "a duly executed instrument making the county auditor the agent of the obligor for the purpose of being served with original notice of suit on said bond."

Sec. 4 prohibits the transient merchant from advertising or representing the goods which he offers for sale "as being sold as an insurance, bankrupt, railway wreck, insolvent, assignee, trustee, executor, administrator, receiver, syndicate, wholesale, manufacturer or closing out sale, or as a sale of goods damaged by smoke, fire, water or otherwise," unless such dealer shall first file with the auditor a sworn statement showing where and of whom he obtained the goods, the place from which the goods were last taken "and all details necessary exactly to locate and fully to itemize all goods, wares and merchandise so to be advertised and represented." A false statement in any of these respects is made punishable as perjury.

Sec. 5 defines the words "temporary or transient merchant," making them applicable to "all persons, firms or corporations who engage in, do or transact any temporary or

transient business, either in one locality or more, or by travel-
ing from one or more places in this state, selling goods, wares
or merchandise and who, for the purpose of carrying on such
business, lease or occupy a building, structure or car for the
exhibition and sale of such goods, wares or merchandise.''

Sec. 6 provides that ''Whenever it appears that any such
goods, wares and merchandise have been brought into any
county in this state by a person, firm or corporation who has
not previously conducted a merchandise business therein, and
it is claimed that such stock is to be sold out at reduced
prices, such facts shall be prima-facie evidence that the
person so offering such goods for sale is a transient merchant.''

Sec. 7 provides that, if complaint be made to the county
auditor that any person doing business in any city or incor-
porated town within the county is a transient merchant and
such person shall claim to be a permanent merchant, the
auditor shall require him to furnish a bond with approved
sureties in the sum of $1,000, conditioned to pay the license
fee of $200 in the event that he does not continue in the
business which he is conducting in such city or incorporated
town for a period of one year from the time when such busi-
ness was started.   The bond must also stand for the pro-
tection of all persons having claims against the obligor aris-
ing out of said business as provided in Sec. 3.   This section
concludes with the following:  ''But after such merchant has
been conducting the particular business in which he engaged
in such city or incorporated town for a period of one year,
he shall be held to be a permanent merchant and this act shall
no longer be applicable to him.''

Sec. 8 exempts from the operation of this statute com-
mercial travelers, selling agents in the usual course of busi-
ness, public officers selling property under authority of law,
and ''any person selling farm and garden products.''

Sec. 9 provides that this act shall in no way limit the
authority of any city or town to exact payment of license
from transient merchants desiring to do business therein,

and declares that the "requirements of this act shall be in addition thereto."

Sec. 10 directs that license collected under the authority of this act shall be paid into the general revenue fund of the county; and

Sec. 11 makes the violation of the provisions of the act a misdemeanor, upon conviction of which the person so offending "shall forfeit and pay into the county treasury, in addition to the penalty imposed therefor, double the amount of the tax for one year, as fixed by Sec. 2."

The extraordinary character of this statute justifies the expenditure of time and space we have given to the statement of its several provisions. Moreover, the objections raised thereto on constitutional grounds can be properly disposed of only upon due consideration of the act in its entirety. Of the authority of the legislature to provide for the regulation of business by transient and itinerant dealers, there can be no reasonable question. Nor is there room to doubt that a measure of such authority has been delegated to cities and towns organized under the laws of the state; but in this, as in most other respects, the power of the state and of its municipalities is circumscribed by constitutional limitations. We have, then, to consider whether this statute is open to any of the objections raised by the appellee.

In the exercise of the admitted authority to which we have already adverted, the legislature ordinarily has discretion to select and classify the occupations or the kinds of business for which license fees or occupation taxes shall be exacted and the courts will not undertake to review or nullify such action of the lawmaking body unless it clearly appears that the classification made is unnatural or arbitrary and unreasonable and founded on no real difference between the occupation taxed and others exempted from its burdens. See *State v. Mitchell,* 97 Me. 66 (94 Am. St. 481) and cases there cited.

Assuming a valid classification to have been made, then

the tax or license exacted must be uniform and bear equally upon each individual or person or kind of business coming within that description. Constitution of Iowa, Art. 1, Secs. 1 and 6; Art. 3, Sec. 30. See also the comprehensive citation of authorities in note to *Hager v. Walker,* 129 Am. St. R. (Ky.) 238, 250.

So, too, if the occupation be one of harmless character or one which is admittedly useful, the license fee imposed must not be so exorbitant or oppressive as to be prohibitive of its pursuit or to create a monopoly for the benefit of a favored few. *Kendrick v. State,* 142 Ala. 43; *Morton v. Mayor,* 111 Ga. 162; *State v. Moore,* 113 N. C. 697; *State v. Santee,* 111 Iowa 1, 4; note to *Hager v. Walker,* 129 Am. St. R. 238, 260; *Iowa City v. Glassman,* 155 Iowa 671. And this is especially true where the burden laid upon a particular business or occupation is not imposed in the exercise of the taxing power for the purpose of revenue, but is rather an assertion of the police power which has its justification only in the inherent authority of the state to provide reasonable regulations "to promote the health, comfort, safety and welfare of society." Cooley's Constitutional Lim. (6th Ed.) 704.

The weight of authority is to the effect that a license fee enacted as a police regulation for an occupation or business which is not of itself harmful or demoralizing must have some fair relation to the cost of making and issuing the license and the expense of police supervision and protection. *Wisconsin Telephone Co. v. Milwaukee,* 126 Wis. 1; *Robinson v. City of Norfolk,* (Va.) 60 S. E. 762; *Postal Co. v. Taylor,* 192 U. S. 64 (48 L. Ed. 342); Tiedeman on Police Powers, p. 274.

When, therefore, it is clearly evident that an act sought to be justified as an exercise of the police power is not in fact intended as a regulation, and that its real purpose—no matter what verbiage is employed to conceal it—is to raise revenue or to accomplish some ulterior effect not within the legitimate province of legislation, the courts will hold it

to be unauthorized and void. *Iowa City v. Glassman,* 155 Iowa 671. See cases above cited. It may further be added, without here elaborating upon the proposition, that the manner and method provided for the enforcement of such an act, whether it be intended merely to provide revenue or to establish a police regulation, must be consistent with due process of law.

Passing, then, to the statute here in question, let us first consider the objection made thereto that it is arbitrary and unreasonable and that the license imposed is unequal in its burdens and discriminating in character. The

1. CONSTITUTION-
AL LAW : gen-
eral operation
of laws : regu-
lation of occu-
pations : class-
ifications :
Transient
Merchant Act.

requirement in Sec. 2, that ''any transient merchant'' desiring to do business in any county must first procure a license, pay a fee and give a bond, is clear and comprehensive and gives no hint of discrimination, and if

this were all, it would doubtless be well within the authority of the legislature, unless we should find the amount of fee required and the exaction of a bond to be so manifestly arbitrary and excessive as to defeat its purpose. But when we go farther, and examine Secs. 1 and 5, we find that the provision which before was broad enough to include every transient merchant seeking to do business in the state is restricted to transient merchants in cities and towns, and then is still further narrowed down to persons engaging in such occupations *''who for the purpose of carrying on such business hire, lease or occupy a building, structure or car for the exhibition and sale of such goods.''* In other words, the effect of the general provision is thus so narrowed that the gist of the offense is not in doing business as a transient merchant within the county, but in hiring, leasing or occupying a building, structure or car for the purpose of carrying on such business. Giving literal effect to this provision, if the defendants should bring a dozen buggies from Marshalltown to Indianola and without procuring a license sell them from a shop or building engaged for that purpose, they would be

guilty of a punishable misdemeanor; while a competing dealer coming from Des Moines to the same town with an equal number of buggies and selling them from a vacant lot hired or leased for that purpose would be guilty of no offense at all. That this distinction is arbitrary and unreasonable is too clear for argument. In the illustration we have used, the business transacted by the dealer from Marshalltown and that transacted by the dealer from Des Moines is in all essential respects identical, and no reasonable ground can be assigned for saying that one is a transient merchant and the other is not. *Chaddock v. Day*, 75 Mich. 527; *State v. Wagener*, 69 Minn. 206; *Leonard v. Reed*, 46 Colo. 307; *State v. Parr*, 109 Minn. 147.

Again, after describing the class of persons or dealers required to obtain the license as including all temporary or transient merchants, and after making the term applicable

2. CONSTITUTION-AL LAW: general operation of laws: arbitrary classification: delegation of power.

to "all persons, firms and corporations both principal and agent who engage in, do or transact any temporary or transient business either in one locality or more, or by traveling from one or more places in this state selling goods, wares or merchandise," the act expressly excepts from its operation the selling of goods by "commercial travelers" and by "selling agents in the usual course of business," also the selling of "farm and garden products." No standard is given or fixed by which the officer issuing the license may differentiate with any certainty between the "agent" who, by Secs. 2 and 5, is forbidden to transact a temporary business without a license and the "selling agent" who, by Sec. 8, is exempted from such obligation. A traveling or transient merchant may employ an agent to sell his goods, wares or merchandise and, in exercising the authority thus conferred upon him, the agent is as certainly a "selling agent in the usual course of business" as if he were doing the same service for a permanent merchant. The statute as written leaves it open to the licensing officer to arbitrarily

draw a line or make a discrimination between agents or sales-
men of the same essential kind and character, and this, we
think, is a power which cannot be constitutionally conferred
upon any officer or individual. *Yick Wo v. Hopkins*, 118
U. S. 356; *State v. Hoyt*, 71 Vt. 59; *Noel v. People*, 187 Ill.
587; *State v. Mitchell*, 97 Me. 66. It is also open to ques-
tion whether the exemption of transient dealers in farm and
garden products is not an improper discrimination, but our
conclusion that the statute is otherwise fatally defective ren-
ders it unnecessary that we now take time for its discussion.
But see *State v. Wagener*, 69 Minn. 206; *Connolly v. Union
S. Pipe Co.*, 184 U. S. 540, 564; *Brown v. Jacobs*, 115 Ga.
429; *State v. Garbroski*, 111 Iowa 496.

It is further to be noted that the regulation which is here
sought to be enforced is not one imposed by a city or town,
and thus limited in its effect to business done in municipal

3. CONSTITUTION-
AL LAW: gen-
eral operation
of laws: regu-
lation of occu-
pations: class-
ifications:
Transient
Merchant Act.

corporations. It is enacted as a general stat-
ute by the legislature, but limited in its appli-
cation to persons doing a transient business in
cities and incorporated towns, while expressly
preserving to such municipalities all their
statutory powers of license and regulation. It

discriminates, however, between transient dealers who do
business in towns and those who do not. Were this regulation
one provided by a city or town ordinance, such discrimination
would be natural and necessary; for, generally speaking, the
authority of the city to legislate is restricted to its own terri-
tory: but whether the general assembly, legislating for the
whole state, may impose an occupation tax or license discrim-

4. CONSTITUTION-
AL LAW: gen-
eral operation
of laws: class-
ifications:
municipal
boundary lines
as basis.

inating between two persons doing precisely
the same kind of business, taxing the one heav-
ily and entirely exempting the other, because
the boundary line of a city or town happens to
pass between their places of business, is not

so clear. See *Hager v. Walker* (Ky.) 107 S. W. 254. That
it would be competent, under our Constitution, for the legis-

lature to impose an occupation tax upon a specified class of merchants or professional men in certain counties of the state and exempt all others therefrom, no one will contend. Is the law any less repugnant to the constitutional inhibition of local legislation because, instead of restricting it by county lines, its operative effect is limited to cities and towns? If the law were ostensibly or in fact enacted for the benefit of cities and towns, it is possible that this objection might lose some of its force; but such is clearly not its purpose. No authority or power is given the municipality which it did not before possess. The officers of the city are charged with no duty or responsibility with respect to its enforcement. The license paid goes wholly to the general fund of the county. No police protection or supervision is prescribed. No regulation is provided as to the manner or method in which a licensee shall conduct his business. It is, upon the surface at least, nothing more nor less than a general provision for the levying of a license or occupation tax, not upon all transient merchants, but upon that portion of the class so designated which undertakes to do business in cities and towns. If it be expedient or proper to levy such a tax for state purposes, there is no reason apparent to the court or suggested by counsel in argument why it should not be subject to the fundamental rule that the burden of the tax should be imposed equally upon all coming naturally and fairly within the described occupation.

Still another discrimination is seen in Secs. 6 and 7, where, as we have already noted, it is provided that "whenever it appears" that a stock of goods has been brought into any county by a person *"who has not previously conducted a merchandise business therein"* and "it is claimed that such stock is to be closed out at reduced prices," such fact shall be prima-facie evidence that such person is a transient merchant. In other words, if two competitors in this line of business bring into the county two stocks of

5. Constitutional law: general operation of laws: regulation of occupations: Transient Merchant Act.

goods of the same general character, which they place in adjoining store buildings, and offer them for sale at reduced prices, and it further appears that one of them has at some previous time conducted a mercantile business in that county, while the other has not, then the latter (if the statute be valid) is required to procure a license and give a bond for the benefit of his customers and, upon failure to do so, may be prosecuted and convicted and be made to suffer as a criminal, while the former is subject neither to license fee nor penalty of any kind. The absurdity of the proposition and the gross injustice of such a rule of law is too apparent upon its simple statement to require discussion. If such discrimination is not unnatural and unreasonable and such enactment be not class legislation of the most obvious character, then the constitutional guaranties of personal and property rights may well be said to have become obsolete.

Coming now to the objection that the statute contravenes the constitutional guaranty of due process of law and of life, liberty and property, we turn to the provisions of

6. CONSTITUTIONAL LAW: "due process": essentials: notice: hearing.

Sec. 7. It is there provided that, upon complaint to the county auditor that any person is doing business as a transient merchant in any city or town of such county, the auditor shall require of such merchant, and he shall furnish, a bond in the sum of $1,000, conditioned that, if he does not continue in the business in which he is engaged in such city or town for the period of a year, he shall pay the license fee and all claims arising against him growing out of said business; but if he shall continue to conduct the "particular business" in which he is then engaged for a period of one year, he shall then be held to be a "permanent merchant," and no longer liable to the tax. There is no requirement as to the person or persons entitled to make the complaint, nor that it shall be in writing, nor that it shall be verified by the oath of any person. It provides for no hearing or notice, or opportunity of defense. The only recourse of the person of whom the de-

mand is made is to quit business or to pay the fee of $200 and give the required bond, or to give a bond to secure such payment until, by a year's continuance in the same business in the same place, he has acquired the right to call himself a "permanent merchant." Failure to give the bond is a violation of the statute which subjects him to an onerous fine. Even though he be in fact a lifelong resident of the place and a veteran merchant in the town or city, yet, upon the simple unverified complaint of any person to the county auditor that he is a transient, he may thus be deprived of the right to transact his ordinary business, or be kept under bond and subjected to the inquisitorial interference of the auditor without any adequate remedy for the wrong so inflicted. The constitutional right to life and liberty and to acquire, possess and enjoy property is not a mere glittering generality without substance or meaning. It includes the right to pursue a useful and harmless business without the imposition of oppressive burdens by the lawmaking power, subject, of course, to the sovereign right of the state to lay thereon the ordinary burdens of taxation, assessed and collected according to the established forms of law, and to such reasonable regulations as the peace, comfort and welfare of society demand. Due process of law does not necessarily mean judicial proceedings in all cases, but it never means less than some prescribed course of legal proceedings in which the person adversely affected shall have an opportunity to be heard and to resist, if he be so advised. Depriving an owner of property of one of its essential attributes is depriving him of his property within the constitutional provision. *People v. Otis,* 90 N. Y. 48. To take from property its chief element of value and deny to the citizen the right to use and sell or transfer it freely in any proper and legitimate method is as much depriving him of his property as if the physical property itself were taken. *Bank v. Divine Grocery Co.,* 97 Tenn. 603.

So, too, we are of the opinion that to impose oppressive and unequal burdens upon the buying and selling of goods,

conditions which necessarily hamper the merchant in his business and take away or diminish the profitable employment of his labor or capital is an unconstitutional taking of his property, and that such exactions are not cured or legalized by affording him the option to give a bond and prove his non-liability to the wrongful demand by a specified course of conduct in the future. If he gives the bond in this case, he deprives himself of the right to sell and dispose of his stock and enter any other business for an entire year; otherwise to subject himself to the payment of a license fee with which he is not legally chargeable. Such an exaction by an administrative officer has none of the characteristics of a legal proceeding and is in no proper sense due process of law.

We have said enough to indicate the necessity of affirming the judgment below, but we think it proper to add that it is perfectly manifest, from a reading of the entire statute,

7. CONSTITUTION-
AL LAW: po-
lice power: ex-
ercising power
for ulterior
purpose:
crushing com-
petition.

that the ultimate purpose sought to be accomplished by its provisions was neither to raise public revenue nor to hedge the business of transient merchants with police regulations for the public benefit, but rather to relieve the so-called permanent merchant of the more or less annoying competition of the transient merchant. The plan is laboriously wrought out and is couched in terms phrased to avoid, if possible, the fate which has overtaken many other statutes of similar design when brought to a judicial test. Whatever may be the justice of the complaint that the transient merchant does not pay his share of the taxes, the remedy is not to be found in outlawing him or destroying his business or by creating a monopoly for the resident merchant. Assuming that both lines of business are honestly conducted, one is as legitimate as the other and entitled to like protection, and the law should not be converted into a weapon by which either competitor may annihilate the business of the other. Speaking upon this question, the Michigan court has well said: "It is quite common in these latter days for cer-

tain classes of citizens—those engaged in this or that business—to appeal to the government—national, state, or municipal—to aid them by legislation against another class of citizens engaged in the same business, but in some other way. This class legislation, when indulged in, seldom benefits the general public, but nearly always aids the few for whose benefit it is enacted, not only at the expense of the few against whom it is ostensibly directed, but also at the expense and to the detriment of the many, for whose benefit all legislation should be, in a republican form of government, framed and devised. This kind of legislation should receive no encouragement at the hands of the courts, and be only upheld when it is strictly within the legitimate power of Congress or the state or municipal legislatures." *Chaddock v. Day*, 75 Mich. 527.

In conclusion, we repeat what we have already suggested: that the power of the state to tax and regulate different occupations and lines of business is not to be denied.

8. CONSTITUTIONAL LAW: taxation: "power to destroy": occupation tax: right to acquire property.

It is also true that the courts have sometimes said "the power to tax is power to destroy"; but, as is usual with all general propositions, this concession may be overworked. The power to tax cannot lawfully be carried to an extent to destroy rights or privileges guaranteed by the Constitution. The first section of our Bill of Rights assures to every man protection in his natural right to acquire, possess and enjoy property. This necessarily includes the right to buy, sell and exchange; and, in so far as the traffic is of a harmless and useful character, the state may not impose an occupation tax which shall operate as a prohibition or as a burden of magnitude sufficient to render the right valueless. For example, if the legislature should impose an occupation tax of one thousand dollars per year upon every market gardener or farmer or carpenter or grocer or telegraph operator or washerwoman, no court would hesitate to say it was an unconstitutional abuse of power. The power and discre-

tion of the legislature are broad, but they are not illimitable; and while we will be slow to invalidate a statute enacted in due form, we will not hesitate so to do if the unconstitutionality of the act is patent. Nor is the constitutional protection of the common and universal right to life and liberty and to the acquirement, use and enjoyment of property to be avoided by calling an exorbitant and prohibitive tax a license fee imposed as a police measure. The police power is not superior to the Constitution, and police regulations of a business not of a dangerous character which amount to undue restraint or prohibition will not be sustained. *State v. Ashbrook*, 154 Mo. 375; *Chicago v. Netcher*, 183 Ill. 104; *State v. Moore*, 113 N. C. 697.

The Kentucky Court of Appeals, while conceding that the amount of property tax to be imposed in the general power of taxation is vested exclusively in the legislature, proceeds to say, ''But this unlimited freedom from judicial control does not extend to taxes imposed upon trades, occupations or professions, and the courts . . . have the undisputed right to determine whether or not a legislative act is in violation of the Constitution, although its purpose may be the raising of revenue.'' *Hager v. Walker* (Ky.) 107 S. W. 254.

In short, the right of the state to impose an occupation tax or license fee upon harmless and useful lines of business is to be exercised with due regard to the natural and constitutional right of every individual to pursue an honest calling and have and enjoy the benefits of his own labor and be secure in the use and enjoyment of his own property.

There are many other questionable features of this statute, some of which are discussed by counsel, but those to which we have given attention are sufficient to dispose of the appeal. The trial court did not err in holding the enactment void and refusing to enforce it. The judgment below is—*Affirmed*.

All the Justices concur.