## UNION BANK & TRUST CO. *v.* PHELPS.

No. 346. Argued January 17, 1933.—Decided February 6, 1933.

182

*Messrs. William B. White* and *John S. Coleman* for petitioner.

*Messrs. Thomas E. Knight, Jr.,* Attorney General of Alabama, and *Frontis H. Moore,* Assistant Attorney General, for respondent.

MR. JUSTICE McREYNOLDS delivered the opinion of the Court.

Union Bank & Trust Company, the petitioner, organized under the laws of Alabama and located in Montgomery County, receives deposits and carries on a general commercial and savings bank business. It sued respondent in a state court to recover $2521.69, alleged to have been illegally exacted as taxes assessed for the year ending September 30, 1931. The assessment followed § 6, Revenue Act of Alabama, 1923 (General Acts, 1923, 152), which directs—" Every share of any incorporated bank or banking association incorporated under the laws of this State, or any other state, or of the United States, shall be assessed for taxation in the county, and in the city or town where such bank is located at sixty per cent of its fair and reasonable market value."

During 1930, 1931 and 1932 there were building and loan associations, industrial loan companies and corporations, and industrial banks in Montgomery County, which loaned money in substantial competition with petitioner to the extent of hundreds of thousands of dollars, the shares and the capital of which were exempted from ad valorem taxes. Also, there were mortgage companies and corporations and individuals, persons, firms and associations engaged in like business and employing moneyed capital to the extent of many thousands of dollars in substantial competition with petitioner, which were either untaxed or definitely exempted.

The federal court had ruled that shares of National Banks in Alabama could not be subjected to taxation under § 6, Act of 1923, since the tax was not laid in conformity with § 5219, U. S. Rev. Stats., as amended by the Acts of March 4, 1923, c. 267, 42 Stat. 1499, and March 25, 1926, c. 88, 44 Stat. 223, which only permits taxation of shares of national banking associations at a rate no

greater than the one required of other moneyed capital in the hands of individual citizens coming into competition with the business of such associations. The state officers had accepted these decisions as correct declarations of the law.

Petitioner based its claim to recover upon the theory that the tax assessed against its shares had been exacted in violation of the equal protection clause of the XIV Amendment; also in violation of §§ 211 and 217, Constitution of Alabama, which provide that all taxes shall be assessed in exact proportion to value and the property of private corporations, associations, and individuals shall be taxed at the same rate.

The trial court gave judgment for petitioner. The Supreme Court reversed this action and denied any recovery, holding that the legislature had not exceeded its powers in making classifications and exemptions; and, specifically, that there was no violation of the Federal Constitution.

Only the federal question is before us. Was the petitioner denied equal protection of the laws?

Because of existence within the State of untaxed moneyed capital and shares of corporations in actual competition with National Banks, the shares of the latter during the years in question were not subject to ad valorem taxation under § 6, Revenue Act of 1923, or otherwise. And the State Supreme Court so held.

We cannot say that the State Legislature exceeded its power to make reasonable classification when it directed that moneyed capital or the property and shares of building and loan associations, industrial loan corporations, industrial banks, mortgage companies, etc., should be exempt from ad valorem taxation, or taxed on a different basis from the one prescribed for banks accepting deposits and doing a general commercial business, notwithstanding actual competition between them.

Mere competition between them is not enough to show two concerns must be burdened alike. The State Legislature reasonably might have determined that there was, fair ground for distinction; and upon the record we may not hold that its action was arbitrary, capricious or wholly unreasonable.

There was sharp disagreement in the court below, but none of the judges suggested disapproval of the view just stated. The minority did not discuss the federal question, but found violation of the uniformity clause of the State Constitution.

The doctrine applicable here was recently expounded in *Ohio Oil Co.* v. *Conway*, 281 U. S. 146, 159, and need not be restated.

Counsel for petitioner stoutly maintain: Shares of State and National banks belong to the same species of property. Not only are they essentially similar, but for many years the Revenue Statutes of Alabama have put them in the same category. Under the scheme of taxation presently existing in the State, National bank shares escape assessment while shares of State banks are subject thereto. Consequently, the latter are deprived of the equal protection of the laws guaranteed by the XIV Amendment.

A sufficient answer is that within the intendment of the XIV Amendment shares of National and State banks are not essentially the same when considered in connection with taxation. Nor do they become so merely because the State has attempted to subject them to like treatment.

The several States lack power to tax National bank shares except as expressly permitted by Congress. *Owensboro National Bank* v. *Owensboro*, 173 U. S. 664, 668; *Des Moines National Bank* v. *Fairweather*, 263 U. S. 103, 106; *First National Bank* v. *Anderson*, 269 U. S. 341, 347. This is enough to negative the idea that shares of

National and State banks are essentially the same for purposes of taxation. And the Alabama Supreme Court has held that under her Constitution, although the legislature may have included them in the same class of taxable objects, there is permissible distinction between them.

To accept the doctrine that as the States can only tax a federal instrumentality when permitted by Congress, therefore they can not tax competitors of such instrumentalities within their general jurisdiction in some other fashion without violating the XIV Amendment would be both illogical and destructive of their proper independence.

Such instrumentalities are exempted from state taxation without the express consent of Congress, by the Federal Constitution. They are of a class wholly distinct from the property of ordinary corporations or individuals, and this fact cannot be disregarded by the State. If the State sees fit to tax unrestricted property within her jurisdiction and to omit National Bank shares, the classification cannot be said to be arbitrary and wholly unreasonable—the basis of it is plain enough. It may be vastly more important for the State to omit National Bank shares and tax ordinary moneyed capital according to a plan not permissible in respect of National Bank shares rather than conform to the standard prescribed by Congress. There is nothing to indicate that Congress ever supposed that mere establishment of a National Bank within a State could upset the scheme for taxation, theretofore entirely proper, by producing conflict with the XIV Amendment. This view would subject the taxing power of the State to the will of Congress far beyond what is necessary for the protection of federal agencies. The constitutional inhibition against taxing these agencies does not abridge the taxing power of the several States in respect of other property. The implied exemption is a shield for federal

agencies—not the source of congressional power to control State action in respect of other matters.

*Iowa-Des Moines National Bank* v. *Bennett*, 284 U. S. 239, much relied upon by petitioner, is not controlling— the circumstances and issues there involved were wholly different from those here presented. The Iowa Supreme Court found, or assumed, and this was accepted here, that through the wrongful action of state taxing officials the complaining banks had been subjected to intentional, arbitrary and systematic discrimination through assessments greatly in excess of those imposed upon competing moneyed capital; and the unequal exactions complained of were in violation of the Iowa laws. The points for decision in this Court concerned the effect of unauthorized action by state officers (Could such action be attributed to the State?) and the proper remedy. Unlawful inequality of treatment as between the banks and competing capital was not controverted. There was no occasion to consider whether failure by a State to tax National banks while subjecting her own banks to taxation would occasion discrimination against the latter forbidden by the XIV Amendment.

The judgment of the court below is

*Affirmed.*