## Reynolds Metal Co. et al v. Martin et al.

(Special Court of Appeals of Kentucky.)

(Decided June 23, 1937.)

380

WOODWARD, DAWSON & HOBSON, EDWARD P. HUM-

PHREY, ROBERT F. VAUGHAN, CALDWELL & GRAY, JOHN C. VIGOR, BENTON & BENTON, JOHN H. GARDNER and MARVIN H. TAYLOR for appellants.

HUBERT MEREDITH, Attorney General, A. E. FUNK, Assistant Attorney General, and ROBERT E. HATTON for appellees.

OPINION OF JUDGE DIETZMAN, OF SPECIAL COURT OF APPEALS—Modifying judgment and affirming as modified.

This case involves the constitutionality of chapter 7 of the Acts of the Third Extraordinary Session of the General Assembly of 1936, now section 4281b-1 et seq. of the 1936 Edition of Carroll's Kentucky Statutes, and commonly known as the "State Income Tax Law."

The regular members of the Court of Appeals having declined to sit in this case and that of Martin et al. v. Wolfford, 269 Ky. 411, 107 S. W. (2d) 267, this day decided, such fact was certified to his Excellency, the Honorable A. B. Chandler, Governor of the Commonwealth, who thereupon appointed and commissioned as special judges of the Court of Appeals to hear the appeals in these cases, the following practicing attorneys of the state: James W. Cammack, as Chief Justice, and D. Bernard Coughlin, Frank Daugherty, Richard Priest Dietzman, Noel Harper, W. F. McMurry, and Henry R. Prewitt, as Associate Justices.

Except in certain particulars, to which reference will hereafter be made, the lower court held the provisions of the act constitutional, and since it thought that those parts of the act which it deemed unconstitutional could be readily separated from the rest of the act without doing violence thereto, it made such separation, and upheld the validity of the rest of the act. From the judgment so entered this appeal is prosecuted.

At the outset, in deference to the earnestness of counsel for the appellants in their briefs, it may be observed that with the wisdom or expediency of this State Income Tax Law, this court has no concern. That is a matter for the legislative branch of our government. The question presented is, not the wisdom or expediency of the act, but its constitutionality. Our sole duty is to measure the act by the yardstick of the Constitutions, State and Federal, ever bearing in mind the further duty which rests upon us of resolving any doubt of the validity of the act in favor of its consti-

tutionality. Talbott, Auditor, v. Laffoon, Governor, 257 Ky. 773, 79 S. W. (2d) 244.

The power to tax is inherent in the sovereignty of the state, and is essential to its existence. Save to the extent that such power may be prohibited or limited by the State's Constitution, or that of the United States, it may be exercised without limit. Billeter & Wiley v. State Highway Commission, 203 Ky. 15, 261 S. W. 855; Board of Education of Calloway County v. Talbott, 261 Ky. 66, 86 S. W. (2d) 1059. The provisions of our Constitution regarding taxation therefore operate as limitations only on what is otherwise an unlimited power.

We are met at the threshold of this case with the primary contention of the appellants that the State Income Tax Law here involved imposes a property tax, and that if this be so, it is plainly unconstitutional in the light of the provisions of our State Constitution requiring uniformity of taxation. The appellees concede that if the tax imposed by this State Income Tax Law be in reality a property tax, then it is unconstitutional, being in violation of sections 171 and 172 of our State Constitution, but insist that such tax is not a property tax, but a tax in the nature of an excise or duty. We are therefore first required to determine the nature of the exaction imposed. A brief summary of the State Income Tax Law is here appropriate.

Section 1 of that act deals with certain definitions, none of which is helpful in determining the question of the nature of the tax.

Section 2 defines "gross income" as that term is used in the act in these words: It "includes gains, profits and income derived from salaries, wages, or compensation for personal services of whatever kind and in whatever form paid, or from professions, vocations, trades, businesses, commerce, or sales or dealings in property, whether real or personal, growing out of the ownership, or use, or interest in such property * * * also from rent, royalties, interest, dividends, securities or transactions of any business carried on for gain or profit, or gains or profits and income derived from any source whatever, including gains or profits and income derived through estates or trusts by the beneficiaries thereof, whether as distributive or as distributable shares."

There is excluded from the term "gross income" certain portions of life insurance, endowment or annuity contracts, gifts, accident and health insurance, compensation under workmen's compensation acts, amount of damages received by compromise or suit on account of injuries or illness, and interest upon the obligations of the United States, or instrumentalities of the federal government, and interest upon the obligations of this commonwealth, or any of its political subdivisions and instrumentalities thereof.

Section 3 provides for certain deductions which may be made from gross income, among which are:

"Dividends received during the taxable year upon stock of national banks and dividends received during the taxable year upon stock of banks and trust companies organized under the laws of this State."

Section 4 expressly provides that for certain enumerated expenditures no deductions are to be allowed.

Section 5 defines the term "net income" as meaning "the gross income of a taxpayer less the deductions allowed by this Act."

Section 6 governs the determination of income arising from gains or losses from the sale or other disposition of property, real, personal, or mixed; and section 7 that arising out of exchanges of such property.

Section 8 prescribes the accounting period upon which the income of the taxpayer is computed.

Sections 9 and 12, inclusive, have to do with returns.

Section 13 deals with exemptions. In the case of a single person, the personal exemption is $1,000, and in the case of a head of the family or of a husband and wife living together, the exemption is $2,500, to which is added the further exemption of $400 per dependent, as such dependent is defined in the act. Subsection 1 of this section further provides:

"A husband and wife living together shall make a joint return, or may make separate returns if submitted together; provided, that if husband and wife living together make separate returns their incomes shall be aggregated for the purpose of computing the tax due. [If husband and wife have separate incomes, they may divide the tax between them in proportion to income.]"

Section 13 also provides that the exemptions allowed by its provisions are chargeable against the first bracket or brackets of income.

Section 14 of the act, the one imposing the tax, does so in this language:

> "A tax is hereby annually levied for each taxable year upon every resident individual of this State upon his entire net income as herein defined for purposes of taxation (subject to exemptions provided in Section 13) at the following rates."

(Here follow the brackets of income with the applicable rate of taxation.)

Subsection (2) of this section 14 levies like taxes upon nonresidents deriving income from property owned or business carried on in this state with respect to such income. This subsection further provides:

> "In the case of non-residents and of residents who receive credits on account of income taxes paid in other states, the personal exemptions allowable under this Act shall be that proportion of those permitted under Section 13 which is represented by the ratio of the taxpayer's net income in Kentucky to his total net income from all sources."

This subsection also provides that an employer of a nonresident and any person making payments to a nonresident may be required by the Department of Revenue to withhold from any payments made to such nonresidents, an amount not exceeding 5 per cent. of the payments so made. After the nonresident shall have submitted his annual return to the Department of Revenue, and the same has been audited, the department must refund any overpayment caused by this withholding, together with interest thereon at the rate of 6 per cent. per annum from the date received, until certified for refund.

Subsection (3) of section 14 of the act provides for the rate of taxation to be paid by corporations. There is excluded from those corporations which have to pay the tax:

> "State and national banks and trust companies, insurance companies including farmers' or other mutual hail, cyclone, windstorm or fire insurance companies, insurers and reciprocal underwriters, and religious, educational, charitable and other

corporations not organized or conducted for pecuniary profit.''

Section 15 of the act allows resident individuals who receive income from sources without the state, subject to taxation under this act, which income is taxed by the state of its origin, a credit on the tax to be paid this state by the amount so paid the foreign state, provided such foreign state allows credits similar to those granted by section 16 of the act.

This section 16 provides that where a nonresident individual becomes liable for income taxes to the state wherein he resides upon his net income derived from sources within this state, and subject to taxation under this act, he shall be credited on the tax due this state with such proportion of the tax so payable by him to the state where he resides, as his income, subject to taxation under this act bears to his entire income upon which the tax so payable to such other state was imposed, provided such foreign state grants a substantially similar credit to residents of this state subject to the income tax of such foreign state.

Sections 17 to 22, inclusive, of the act also deal with returns.

Section 23 vests the Department of Revenue of the State with the power to administer the provisions of the act, and to promulgate such rules and regulations, and to prescribe such forms as may be necessary for the enforcement of the act.

Section 24 concerns the time when returns are to be made; section 25, the extension of time for filing returns; section 26, revisions and appeals; section 27, refunds; section 28, the time when the tax is to be paid.

Section 29 covers the matter of taxes to be paid by estates and trusts, the tax being levied annually upon and with respect to the income of the estates, or any kind of property held in trust.

Section 30 has to do with fiduciary returns; section 31, partnership incomes; section 32, allocation of corporate income.

Section 33 provides that every tax imposed by the act shall become from the time it is due and payable a personal debt from the person or persons liable to pay the same.

Section 34 deals with penalties and interest.

Section 38 provides that the provisions of the act are severable. In part it reads:

"If any provisions, section, paragraph, or the application of any provision to any class of taxpayers should be held unconstitutional or invalid, such decision shall not affect or impair the remainder of the Act, it being hereby declared the legislative intent to tax separately each class of income contemplated by any of its provisions."

Turning now to our State Constitution, we find that section 170 sets out the property which shall be exempt from taxation. The section then reads:

"And all laws exempting or commuting property from taxation other than the property above mentioned shall be void."

Section 171 of the Constitution in part reads:

"Taxes shall be levied and collected for public purposes only and shall be uniform upon all property of the same class subject to taxation within the territorial limits of the authority levying the tax; and all taxes shall be levied and collected by general laws. The general assembly shall have power to divide property into classes and to determine what class or classes of property shall be subject to local taxation."

Section 172 of the Constitution in part reads:

"All property, not exempted from taxation by this Constitution, shall be assessed for taxation at its fair cash value, estimated by the price it would bring at a fair voluntary sale."

Section 174 of the Constitution provides:

"All property, whether owned by natural persons or corporations, shall be taxed in proportion to its value, unless exempted by this Constitution; and all corporate property shall pay the same rate of taxation paid by individual property. Nothing in this Constitution shall be construed to prevent the general assembly from providing for taxation based on income, licenses or frachises."

Section 181 of the Constitution in part, provides:

"The general assembly may, by general laws only,

provide for the payment of license fees on franchises, stock used for breeding purposes, the various trades, occupations and professions, or a special or excise tax.''

As stated, the first question which confronts us. is the nature of the tax imposed by the State Income Tax Law, for if it be a property tax, it violates the provisions of our Constitution above quoted as to uniformity.

Income taxation is no stranger to the law. It was known in antiquity, and during the Medieval period. Seligman, ''The Income Tax.'' Kennan, ''Income Taxation.'' Shirras, in his work, ''The Science of Public Finance'' (page 240), says that the tax may be traced from the scutage of the Norman Kings through a succession of assessed taxes based on income, to the income tax of Pitt in 1798. In 26 R. C. L. 142, we find:

> ''The income tax which has been in force in England since 1798 has been considered to be a duty or excise, and it has been held that the tax was applicable to interest on the public debt, although it was provided by Statute that such interest should be paid free of any tax or charge whatever.''

Prior to 1894 there was little, if any, controversy in this country regarding the nature of the tax. Chief Justice White, in the case of Brushaber v. Union Pacific Railroad Company, 240 U. S. 1, 36 S. Ct. 236, 240, 60 L. Ed. 493, L. R. A. 1917D, 414, Ann. Cas. 1917B, 713, points out that beginning in 1861 and lasting during what may be termed the Civil War period, various acts taxing incomes derived from property of every kind and nature were passed. He says:

> ''It is not disputable that these latter taxing laws were classed under the head of excises, duties, and imposts because it was assumed that they were of that character inasmuch as, although putting a tax burden on income of every kind, including that derived from property real or personal, they were not taxes directly on property because of its ownership. And this practical construction came in theory to be the accepted one, since it was adopted without dissent by the most eminent of the text writers. 1 Kent, Com., 254, 256; 1 Story Const. sec. 955; Cooley, Const. Lim. 5th ed. *480; Miller, Constitution, 237; Pom. Const. Law, sec. 281; 1 Hare,

Const. Law, 249, 250; Burroughs Tax. 502; Ordronaux, Constitution Legislation, 225."

Our Constitution of 1890, being the one now governing us, was written against this background of the commonly accepted concept of the nature of an income tax. The popularity of the income tax as a means of raising revenue had waned perceptibly after the close of the civil war and reconstruction period. Indeed, in the Constitutional Debates of 1890 it was plainly intimated that resort to income tax legislation by our state would probably never be had.

The depression of the early nineties, coupled with the economic thoughts and theories which were then coming out of the West, and clashing with the economic and social theories of the East caused a change in front nationally, and in 1894 Congress passed an act (28 Stat. 509) placing a tax on income derived from all kinds of property and all sources of revenue, but which did not apportion the tax burden among the states, as direct taxes are required to be by the Federal Constitution.

The constitutionality of this act was at once assailed in the famous case of Pollock v. Farmers' Loan & Trust Co., 157 U. S. 429, 15 S. Ct. 673, 39 L. Ed. 759; Id., 158 U. S. 601, 15 S. Ct. 912, 39 L. Ed. 1108. The law was held unconstitutional because the tax was not apportioned among the states as direct taxes are required by the Federal Constitution to be apportioned. The interpretation rightly to be put upon this Pollock Case, we believe, has been the source of most of the controversy since that time as to the nature of an income tax. Quite a few state courts have construed the decision to mean that an income tax is a property tax.

Justice White, in the Brushaber Case, supra, pointed out that the Pollock Case never meant to go as far as the proponents of the property tax theory insisted it went. The advocates of the property tax theory to break the force of these observations of Justice White have ever insisted that such observations were mere dicta. However that may be, we believe that all doubt as to what the Pollock Case was intended to mean is finally set to rest by the opinion of the Supreme Court, speaking through Mr. Justice Stone in the case of New York ex rel, Cohn v. Graves, 57 S. Ct. 466, 468, 81 L. Ed. —, 108 A. L. R. 721, in which it is said:

"Nothing which was said or decided in Pollock v. Farmers' Loan & Trust Co., 157 U. S. 429, 15 S. Ct. 673, 39 L. Ed. 759, calls for a different conclusion. There the question for decision was whether a federal tax on income derived from rents of land is a direct tax requiring apportionment under article 1, sec. 2, clause 3 of the Constitution. In holding that the tax was 'direct,' the Court did not rest its decision upon the ground that the tax was a tax on land, or that it was subject to every limitation which the Constitution imposes on property taxes. It determined only that for purposes of apportionment there were similarities in the operation of the two kinds of tax which made it appropriate to classify both as direct, and within the constitutional command. * * * But as we have seen, it does not follow that a tax on land and a tax on income derived from it are identical in their incidence or rest upon the same basis of taxing power, which are controlling factors in determining whether either tax infringes due process."

The case of Senior v. Braden, 295 U. S. 422, 55 S. Ct. 800, 79 L. Ed. 1520, 100 A. L. R. 794, does not conflict with the view of the Pollock Case, which the Graves Case thus sets forth. In the Braden Case, the thing taxed was equitable interests in land evidenced by certificates of ownership, the land being located in a state other than the taxing state. The value of the equitable interest or certificate evidencing such interest was by the taxing law determined by the amount of income the land produced. This tax was plainly not an income tax, as Justice Stone in the Graves Case points out, but a tax on the equitable interest in land itself, the income from it being used only to determine the value of that land. In the Graves Case, the Supreme Court returns to, if it had ever departed from, the conception of the nature of an income tax which had prevailed prior to the Pollock Case.

In this Graves Case the question involved was the right of the State of New York to include in the gross income of a resident of that state with respect to which an income tax upon such resident was levied, income derived from rents for property located in New Jersey and from bonds secured by mortgages on New Jersey realty. The Supreme Court upheld the right of New York so to include such income. Mr. Justice Butler

filed a dissenting opinion in which Mr. Justice McReynolds concurred, Mr. Justice Butler's opinion being based on the property theory of income tax legislation. It is significant that the first case he cites in his dissenting opinion is the Pollock Case. The other seven members of the court, speaking through Mr. Justice Stone, said:

"That the receipt of income by a resident of the territory of a taxing sovereignty is a taxable event is universally recognized. Domicil itself affords a basis for such taxation. Enjoyment of the privileges of residence in the state and the attendant right to invoke the protection of its laws are inseparable from responsibility for sharing the costs of government. * * * *A tax measured by the net income of residents is an equitable method of distributing the burdens of government among those who are privileged to enjoy its benefits.* The tax, which is apportioned to the ability of the taxpayer to pay it, is founded upon the protection afforded by the state to the recipient of the income in his person, in his right to receive the income and in his enjoyment of it when received. These are rights and privileges which attach to domicil within the state. To them and to the equitable distribution of the tax burden, the economic advantage realized by the receipt of income and represented by the power to control it, bears a direct relationship. * * * Neither the privilege nor the burden is affected by the character of the source from which the income is derived. For that reason income is not necessarily clothed with the tax immunity enjoyed by its source. A state may tax its residents upon net income from a business whose physical assets, located wholly without the state, are beyond its taxing power. Lawrence v. State Tax Commission [286 U. S. 276, 52 S. Ct. 556, 76 L. Ed. 1102, 87 A. L. R. 374]. * * * It may tax net income from bonds held in trust and administered in another state, Maguire v. Trefry [253 U. S. 12, 40 S. Ct. 417, 64 L. Ed. 739], although the taxpayers' equitable interest may not be subjected to the tax, Safe Deposit & Trust Co. v. Virginia [280 U. S. 83, 50 S. Ct. 59, 74 L. Ed. 180, 67 A. L. R. 386]. It may tax net income from operations in interstate commerce, although a tax on the commerce is forbid-

den, U. S. Glue Co. v. Oak Creek, 247 U. S. 321, 38 S. Ct. 499, 62 L. Ed. 1135, Ann. Cas. 1918E, 748; Shaffer v. Carter [252 U. S. 37, 40 S. Ct. 221, 64 L. Ed. 445]. Congress may lay a tax on net income derived from the business of exporting merchandise and foreign commerce, although a tax upon articles exported is prohibited by constitutional provision. * * * Neither analysis of the two types of taxes, nor consideration of the bases upon which the power to impose them rests, supports the contention that a tax on income is a tax on the land which produces it. The incidence of a tax on income differs from that of a tax on property. Neither tax is dependent upon the possession by the taxpayer of the subject of the other. His income may be taxed, although he owns no property, and his property may be taxed, although it produces no income. The two taxes are measured by different standards, the one by the amount of income received over a period of time, the other by the value of the property at a particular date. Income is taxed but once; the same property may be taxed recurrently. The tax on each is predicated upon different governmental benefits." (Italics ours.)

Further in the case of First Bank Stock Corporation v. State of Minn., 57 S. Ct. 677, 680, 81 L. Ed. —, Mr. Justice Stone, in commenting on the Graves Case, again said:

"But we have recently had occasion to point out that enjoyment by the resident of a state of the protection of its laws is inseparable from responsibility for sharing the cost of its government, and that a tax measured by the value of rights protected is but an equitable method of distributing the burdens of government among those who are privileged to enjoy its benefits."

Thus we see that the Supreme Court has set at rest all doubts as to its position on the nature of an income tax. It is a contribution exacted from those domiciled or doing business in the state for the purpose of defraying the expenses of government, the contribution being measured by the ability of the taxpayer to pay, which in turn is determined by the extent of his income. He is required to pay this tax because he is domiciled or doing business in the state, and so enjoys

the protection of government, the right to earn a living, to receive, keep, and expend income, and to be safe in his property and pursuit of happiness. That this legal theory coincides with the economic theory may be seen from the reports of the Committee of the National Tax Association. Its report in 1919 recommended that "a tax should be levied upon persons in respect of their entire net incomes, and should be collected only from persons and at places where they are domiciled." Proceedings, vol. X, pp. 437, 438. It reiterated this view in its report of 1933, Proceedings, vol. XXVI, p. 365. The committee justified this tax "as a payment for personal benefits which residents of a State derive from the government under which they are domiciled." Jensen, in his book on Government Finance, enlarges the base on which the economic theory of income taxation rests. He says, on page 298 of his work:

"The personal income tax is in no sense a price for personal services rendered. Its principal function is to raise revenue so as to apportion the aggregate tax from all sources according to the taxpayer's respective abilities to pay."

In Black on Income and Other Federal Taxes (3d Ed.) sec. 44, the author writes:

"The term 'property' as used in reference to taxation means the corpus of an estate or investment as distinguished from the annual gain or revenue from it. Hence a man's income is not property within the meaning of the constitutional requirement that taxes shall be laid equally and uniformly upon all property within the State."

In Cooley on Taxation (4th Ed.) sec. 1751, it is written:

"The better rule seems to be that an income tax is not a tax on property within a constitutional requirement that taxation on property shall be in proportion to its value."

In 26 R. C. L. p. 142, the author, wrestling with the opinions of those state courts, misled in many instances, as we believe, by the "property tax" theory of the Pollock opinion, which have held that an income tax is a property tax, says that whatever the rule may be as to income derived from property itself, a tax on the income from a trade, profession, or employment is undoubtedly an excise, and that it follows that where

the income tax is a general tax to be measured not only by income from a trade, profession, or employment, but property too, the tax is equally an excise, since "in such case a special burden is not put on property by virtue of the ownership thereof."

In Miles v. Department of Treasury (Ind. Sup.) 193 N. E. 855, 860, 97 A. L. R. 1474, in holding that an income tax is not a property tax, the court said:

"Those who contend that an income tax which reaches the income from property is a tax upon property argue that income derived from property is property, and that a tax upon the income, like a tax upon the property itself, is a tax upon property because of ownership. It is obvious that income, or fruit of it in possession at any given time, is property, but * * * one cannot be said to have income at any given time. * * * The Constitution of this state has been interpreted as requiring that all property shall be assessed and taxed, and yet no effort has been made in this state to tax income as property. It is true that accumulations from income in hand upon the 1st day of March have been treated as property and taxed as such. Property is taxed regardless of ownership; the burden being upon the property itself. The property of those residing in foreign jurisdictions is taxed in the same manner and to the same extent as the property of those domiciled within the state, so that property taxes bear no relationship to the domicile of the owner, nor to his enjoyment of the income therefrom."

The court then discusses some Supreme Court cases, and then goes on:

"The language quoted makes clear the distinction between a tax laid upon property itself and a tax levied upon an individual because of his enjoyment of the privileges of domicile within the state, and clearly sustains the view that the amount of his contribution for this privilege may properly be measured by the extent of his income. * * * The individual, as distinguished from his property, is protected in the enjoyment of the privileges of citizenship, the protection of his person, and the enjoyment of his income."

The weight of authority, which includes the recent.

case from the Supreme Court, is in line with this Indiana case. We believe it to be based on better economic theory. An income tax is not a tax on property, but partakes of the nature of an excise, although it is not necessary to call it an excise tax. Nomenclature is of but little importance. The nature of the tax is all important. As we have seen it is simply the exercise of the right of a state to call upon those domiciled, and doing business there, for a contribution to carry on the expenses of government in proportion to their ability to pay; which in turn is measured by their income. This is in no sense a property tax.

To those who may be interested in ascertaining how the states line up on this proposition, we may cite the annotations in 11 A. L. R. 313, 70 A. L. R. 468, 71 A. L. R. 256, and 97 A. L. R. 1488.

From the outline we have given of our State Income Tax Law, we find that the tax is levied upon the individual. It is a personal obligation of his. He may be sued in debt for the tax. In some places in the act the language is used that the tax is levied upon the taxpayer "with respect" to his income. In other places the language used is that the tax is levied on the taxpayer "upon" his income, the word "upon" being used as an equivalent to the phrase "with respect to his income." He must pay the tax although he may have had no property whatever in the state throughout the taxing year, and may, by a lucky turn on the market on the last day of the year, have made the money which measures the income tax he has to pay. The tax is plainly a contribution exacted from those domiciled or doing business in the state for the purpose of defraying the expenses of government, measured by the income they receive, and is paid for the benefits of government, which enables them to live in peace, and security, to make, receive, and enjoy the income. We unhesitatingly conclude that an income tax is not a property tax, and so is not subject to the uniformity provisions of sections 171 and 172 of the Constitution, nor is it governed by the provision as to exemptions in section 170 of that instrument. Strater Bros. Tobacco Company v. Commonwealth, 117 Ky. 604, 78 S. W. 871, 25 Ky. Law Rep. 1717.

It is next contended that even if our income tax is not a property tax, and even if those individuals and corporations subject to it may be classified and differ-

ing rates of taxation be imposed upon the different classes, yet in making such classification, the Legislature must act reasonably and not arbitrarily, and there must be no arbitrary discrimination between classes. That this is so cannot be denied.

In the case of Hager, Auditor, v. Walker, 128 Ky. 1, 107 S. W. 254, 32 Ky. Law Rep. 748, 15 L. R. A. (N. S.) 195, 129 Am. St. Rep. 238, this court, speaking through Judge Carroll, pointed out how the rule thus contended for was so as to classifications of excise, license, and occupational taxes not only under our present Constitution, but also under our earlier Constitutions, despite the absence of express provisions in those Constitutions requiring uniformity of taxation. The standards for classification under our State Constitution are the same as those under the Fourteenth Amendment to the Federal Constitution.

In the case of Williams v. City of Bowling Green, 254 Ky. 11, 70 S. W. (2d) 967, 968, this court said:

"There is no provision of our Constitution that fixes a different standard [for classification] from that prescribed by the equal protection clause of the Fourteenth Amendment to the Federal Constitution. * * * Whether a particular classification offends or does not offend the equal protection clause of the Fourteenth Amendment has been the subject of numerous decisions by the United States Supreme Court. The principles established by those decisions are in brief as follows: The restriction imposed by the Fourteenth Amendment does not compel the adoption of an iron rule of equal taxation, nor prevent a variety or differences in taxation or discretion in the selection of subjects, or the classification for taxation for properties, businesses, callings, or occupations. The fact that a statute discriminates in favor of certain classes does not make it arbitrary, if the discrimination is founded upon a reasonable distinction, or if any state of facts reasonably can be conceived to sustain it. A classification adopted by a Legislature in imposing occupation taxes will be held constitutional if there are substantial differences between the occupations separately classified, and such differences need not be great."

In the case of State Board of Tax Commissioners

of the State of Indiana v. Jackson, 283 U. S. 527, 51 S. Ct. 540, 543, 75 L. Ed. 1248, 73 A. L. R. 1464, 75 A. L. R. 1536, in speaking to the point of the extent of the power of the state to classify without violating the provisions of the Fourteenth Amendment of the Federal Constitution, the Supreme Court of the United States said:

"The power of taxation is fundamental to the very existence of the government of the states. The restriction that it shall not be so exercised as to deny to any the equal protection of the law does not compel the adoption of an iron rule of equal taxation, nor prevent variety or differences in taxation, or discretion in the selection of subjects, or the classification for taxation of properties, businesses, trades, callings, or occupations. * * * The fact that a statute discriminates in favor of a certain class does not make it arbitrary, if the discrimination is founded upon a reasonable distinction * * * or if any state of facts reasonably can be conceived to sustain it. * * * It is not the function of this Court in cases like the present to consider the propriety or justness of the tax, to seek for the motives, or to criticize the public policy which prompted the adoption of the legislation. Our duty is to sustain the classification adopted by the Legislature if there are substantial differences between the occupations separately classified. Such differences need not be great."

So, in American Sugar Refining Company v. Louisiana, 179 U. S. 89, 21 S. Ct. 43, 45 L. Ed. 102, a license tax imposed upon persons and for corporations carrying on the business of refining sugar and molasses, which excepted planters and farmers grinding and refining their own sugar and molasses, was held valid.

In Quong Wing v. Kirkendall, 223 U. S. 59, 32 S. Ct. 192, 56 L. Ed. 350, a license fee imposed on hand laundries was upheld, although it did not apply to steam laundries nor to laundries not employing more than two women.

In W. W. Cargill Co. v. Minnesota, 180 U. S. 452, 21 S. Ct. 423, 45 L. Ed. 619, a state statute requiring the proprietors of warehouses situated on the right of way of a railroad to secure a license from a State Commission, but containing no such requirement as to warehouses not so situated, was held valid.

A very interesting collection of the Kentucky cases bearing on this proposition may be found in an article in volume 25, Kentucky Law Journal, 342, entitled "Excise Taxes and the Uniformity Clause of the Constitution of Kentucky," by E. G. Trimble.

The same considerations which control the matter of classification and selection of subjects for occupational, franchise, and license taxes, are applicable to the classification and selection of subjects for income taxation.

The Legislature has a wide discretion in the selection and classification of the subjects of income taxation and its selection and classification will be upheld as constitutional if any state of facts reasonably can be conceived to support the selection and classification made.

Appellants, conceding these propositions, as indeed they must, most earnestly insist, however, that the exemption of state banks and trust companies from the imposition of the income tax, and the provision in the law to the effect that individuals who are subject to such tax need not include in their gross income, dividends received from stocks held in state banks and trust companies, are such arbitrary and unjust discriminations as cannot be sustained, being violative of not only our State Constitution, but the Fourteenth Amendment as well, and that the rest of the law cannot be saved by eliminating these discriminations, since, so long as these banks are exempt from the tax, the discrimination remains, and it is impossible for this court to avoid the discrimination by imposing the tax upon the banks since the Legislature expressly said they were not to be taxed. Cf. Board of Education of Woodford County v. Board of Education of Midway Independent Graded Common School District, 264 Ky. 245, 94 S. W. (2d) 687.

To support the proposition of unjust discrimination, it is argued that there is no difference between a dollar of income earned by a state bank and trust company and a dollar of income earned either by the plaintiff, an industrial corporation, or the plaintiff, Louisville Industrial Foundation.

The fallacy of this contention, however, lies in appellant's misconception of the tax itself. The tax is not upon the income. It is upon the taxpayer being

measured by his income. And so the problem we have presented is whether any state of facts reasonably can be conceived for putting state banks and trust companies and individuals, in so far as their income is derived from dividends on stock in state banks and trust companies in one class, and corporations, like the plaintiffs here involved, in another.

The appellees suggested in argument that a basis for the exemption of state banks and trust companies from the imposition of the tax is that the same is necessary in order that such banks could be put on an equal competitive basis with national banks. They say, as is true, that in view of the present state system of taxation applicable to national, as well as state banks, national banks cannot, under the federal law, be further subjected to a state income tax.

It is, as they argue, therefore apparent that it is necessary to exempt likewise state banks and trust companies in order that they may be able to compete with the national banks for business. We can find no merit in this contention as thus baldly and literally stated. Compare Union Bank & Trust Co. v. Phelps, 288 U. S. 181, 53 S. Ct. 321, 77 L. Ed. 687, 83 A. L. R. 1438. But back of it, as we believe, is the real reason for the selection and classification here under attack, and that is the present economic conditions which demand and compel a treatment of banking institutions in matters like that now before us in a fashion different from the treatment of corporations like the plaintiffs. In this connection, it is helpful to recall what the Supreme Court said in the case of Euclid v. Ambler Realty Company, 272 U. S. 365, 47 S. Ct. 114, 118, 71 L. Ed. 303, 54 A. L. R. 1016:

"Regulations, the wisdom, necessity, and validity of which, as applied to existing conditions, are so apparent that they are now uniformly sustained, a century ago, or even half a century ago, probably would have been rejected as arbitrary and oppressive. * * * And in this there is no inconsistency, for, while the meaning of constitutional guaranties never varies, the scope of their application must expand or contract to meet the new and different conditions which are constantly coming within the field of their operation. In a changing world it is impossible that it should be otherwise."

Thus we see that present conditions may support a classification which formerly, under different conditions, would have been held arbitrary and which yet in the future because of change in conditions, may become arbitrary. Bases for classification betake somewhat of the philosophy of the Latin poet when he wrote "Carpe Diem." What are the conditions today that support, as we think, the selection and classification here attacked? They are these:

Banks now perform the function of supporting to a very large degree government credit not only national, but state, county, and municipal as well, so absolutely essential if these governments are to carry on as they are compelled to carry on under the strain and stress of economic and social duties imposed and assumed in these strenuous and changing times. It is because of this that both state and national governments have encouraged, if not forced, easy money conditions to the end that the government in its need for credit may not be put in sharp competition with private requirements for funds. In all legislative halls is stressed the necessity of low interest rates in order that the vast debtor population may work itself out of its debtor situation and further, in order that industry by the employment of funds at low interest rates may be encouraged into renewed activity and employment thereby be given to the many now unemployed, and that a larger share of the proceeds of industry may go to labor, industry not having to bear such heavy interest charges.

Taxation is a matter of realities. In the long run the tax burden must be met out of what one makes, and thus it has a very direct relationship to the cost of doing business, a consideration too often forgotten by the consuming public where indirect taxation is involved. This being true, taxation has a very vital relationship to interest rates. Banks are the reservoirs of credit. They collect in the savings and deposits of individuals, and with these as a basis, extend needed credit to the community. But banks, like individuals, must, over a period of time, operate at least without loss, and if their organization and continuance are to be expected and encouraged, a reasonable profit must be theirs. So important did our Legislature deem the encouragement of the establishment and continuance of banks that in 1936 they removed from the statute book the double liability provision on bank stock. In view

of these considerations of public policy, the Legislature did not act arbitrarily or capriciously in making the selection and classification it did with reference to state banks and trust companies.

The same consideration supports the exemption from gross income of individuals of the dividends they receive from bank stock since the purpose of such exemption was to encourage the investment of money in bank stocks to the end that banks may be organized, enlarged and even refinanced to discharge the functions above set out. The repeal of the double liability on bank stock demonstrates this. The Supreme Court of Indiana has upheld a classification of banks in the Miles case, supra, and in so doing said:

"Those engaged in the activities referred to [banks and trust companies] deal in money and credit, and in that respect are readily distinguishable. Their activities are affected by public interest to the extent that their rates and practices have been controlled and regulated. In a sense they deal in money that is not theirs. They furnish the medium through which business is transacted. Through long-established practice, the commissions, charges, or interest differential, which they receive in the handling of the property of others, is so small that a tax based upon the receipt of money by them from their customers or distributors might require that accepted business methods be radically changed. These differences in business practices are sufficient to distinguish them and classify them for different treatment, which may be justified on grounds of public policy."

The plaintiff Reynolds Metals Company, an industrial corporation, clearly falls in a category different from banks and trust companies. The plaintiff Louisville Industrial Foundation, organized as an investment corporation which finances the establishment of industries by investing in their stock, securities, and perhaps even paper, falls obviously into a different class from a commercial bank or trust company, the business of which, as is well known, is conducted along different lines and according to different principles. We are therefore of opinion that the exemption of state banks and trust companies and the exclusion of the dividends on their stock from the gross income of those who pay the income tax are justifiable classifications.

It is next argued that although federal office holders cannot be taxed with respect to the salaries they receive from the federal government (see Collector v. Day, 11 Wall. 113, 20 L. Ed. 122), yet as these office holders were not expressly exempted by the statute, the exemption which is theirs by virtue of the Federal Constitution makes the entire act unconstitutional, since it is not to be presumed that the Legislature would have taxed all the rest of the people if the federal office holders are not taxed with reference to their salaries. The answer to this argument lies in the act itself, for, as we have heretofore pointed out, section 38 of the act expressly states that:

"if * * * the application of any provision to any class of taxpayers should be held unconstitutional or invalid, such decision shall not affect or impair the remainder of the Act, *it being hereby declared the legislative intent to tax separately each class of income contemplated by any of its provisions.*" (Italics ours.)

In this connection we may also notice the contention with reference to so much of the act as compels husbands and wives to aggregate their income for the purpose of determining the rate of taxation to be paid by them. The lower court held such compulsion unconstitutional in view of the case of Hoeper v. Tax Comm., 284 U. S. 206, 52 S. Ct. 120, 76 L. Ed. 248, and no appeal has been taken from that holding. The result is that husbands pay the rate of taxation applicable to their income and wives do the same. Plainly under the quoted portion of section 38 of the act, the holding that husbands and wives cannot be compelled to aggregate their income for the purpose of fixing the rate of taxation to be paid by them does not invalidate the rest of the act.

It is next insisted that under our State Constitution the salaries of state, county, and municipal officers cannot be diminished during the term of office for which they are elected, that to subject those officers to the income tax would be to diminish their salaries, for which reason the act as to them is invalid, and the same argument is made as was made above with reference to the federal office holders. The lower court held in this case that the act was not applicable to officers elected or appointed for a term in office at the time the act was passed. In this the lower court erred in making any

decision, since there was no one before the court affected by the question; but even had there been, and even had the position of the appellants been sound as to the effect of the tax on their salaries, which indeed it is not, as this day decided, Wolfford Case, supra, what we have said with reference to federal office holders, is equally applicable to such state officers.

It is next insisted that the act discriminates against nonresidents with reference to the exemptions allowed them as against so much of their income as is derived from business done in this state. The case of Travis v. Yale & Towne, 252 U. S. 60, 40 S. Ct. 228, 64 L. Ed. 460, is relied upon. Without elaboration, it is sufficient to say that nonresidents and residents, under the Kentucky State Income Tax Law are treated exactly alike so far as the point under discussion is concerned, and the act as now drawn was written to meet the criticism of the Travis v. Yale & Towne Case. We find no merit in this contention.

It is next contended that in the matter of personal exemptions allowed by the act, to take, as the state law requires, the exemptions from the first brackets of taxation, instead of taking them from the higher brackets or last bracket, as the federal law provides, works an unjust discrimination. There is no merit in this contention. To illustrate such lack of merit: A married man, with no dependents, gets a $2,500 exemption. If the $2,500 exemption be taken from the first bracket of income, the taxpayer gets a credit of $50 on his tax bill. Such credit is applicable to all married men, with no dependents, no matter what their income may be. A married man with one dependent will get a credit on his tax bill of $58. All married men so situated will fare alike. Under the federal statute the married man with no dependents, if his income runs into the higher brackets, gets his exemption based on the highest bracket he pays, and if that bracket be the 10 per cent. bracket, he gets a credit on his tax bill of $250, although a married man, with no dependents, whose highest bracket of income falls in the 4 per cent. class, gets a $100 credit on his tax bill. The state act works for greater fairness and equality than does the federal act.

It is next argued that so much of the act as provides that employers or persons making payments to nonresidents who derive income taxable under the act

shall be required by the commissioner to make deductions not exceeding 5 per cent. of the income of such nonresidents and to pay the same into the State Treasury, there to be held until the taxing year is up and the nonresident's liability for tax finally determined, is unconstitutional as in effect being a forced loan to the commonwealth, as it may turn out such nonresidents will owe no tax. The case of Travis v. Yale & Towne, supra, is relied upon. But that case itself recognizes the right of the state to require a withholding of income due nonresidents to secure the state in the taxes due it. Our statute does not require that 5 per cent. be withheld in all instances. Under its provisions, the Commissioner of Revenue is empowered to require a withholding of not in excess of 5 per cent. and this authority, coupled with the further authority which the Department of Revenue has to pass rules and regulations to carry out the purposes of the act has been exercised in such fashion as to require no withholding until $1,000, shall have been paid to such nonresidents, and then a 2 per cent. withholding on the next $2,000 of income paid in, a 3 per cent. holding on the next $1,000, a 4 per cent. on the next $1,000, and not until we pass the $5,000 mark is a 5 per cent. withholding required. The act provides that on a final audit, if more has been withheld than was due from the taxpayer, it shall be refunded to him by the state with 6 per cent. interest. The rule and regulation are eminently fair, and no complaint can be made of the Statute as thus administered.

The appellant Illinois Pipe Line Company makes the additional contention that under section 174 of the Constitution, taxation can be based on income, licenses, or franchises, but not on more than one of such three methods, and that since it pays a franchise tax, it cannot be compelled to pay an income tax too. The fallacy of the argument lies in its misconception of section 174 of the Constitution. The language therein contained: "Nothing in this Constitution shall be construed to prevent the general Assembly from providing for taxation based on income, licenses or franchises," is not a grant of power. The power to tax, save as limited by the Constitution, is inherent in the state and is unlimited. The quoted words of section 174 of the Constitution are not words of limitation. They were simply inserted to clear up any contention which might have been made that the state was confined by the sections

of the Constitution which preceded section 174 to a system of ad valorem taxation.

Other contentions of a minor character are made, but merit no further discussion. In the defense of their position, save as to the nature of the tax here imposed, the appellants have invoked not only the provisions of the State Constitution, but also those of the Fourteenth Amendment to the Federal Constitution. As we have seen, such invocation is without avail.

This is a suit under the declaratory judgment act which empowers this court to make a final declaration of rights as the record may justify. Civil Code of Practice, sec. 639a-6. Although the lower court erred in making any declaration in this suit with reference to the salaries of state and county officers, yet such error does not require a reversal of the judgment, but nothing further than a modification of it by eliminating therefrom so much as declared the rights of state and county officers, leaving that question, so far as this case is concerned, still open. As so modified, the judgment is affirmed.

Whole court sitting.

McMurry, Special Justice (dissenting).

Being unable to agree entirely with the conclusions reached by the majority of this court as stated in the opinion delivered today, I am constrained because of the importance of the questions involved to record my dissent and to state some reasons therefor.

So much of the opinion as holds that the tax levied by the act under consideration is not a property tax, but is in the nature of an excise tax, I approve and concur in. I am, however, unable to approve that part of the opinion which upholds those sections of the act which permit the exemption of state banks and trust companies and which approves the deduction of dividends from the stock of state banks and trust companies.

Subsection (3) of section 14 of the Act (section 4281b-14 (3), Kentucky Statutes 1936 Revision) exempts state and national banks and trust companies from the provisions of the act.

Appellants vigorously urge that this exemption is arbitrary and unreasonable and that it is unconstitutional. Appellee, while admitting that there is a con-

stitutional inhibition against arbitrary classification for tax purposes, contends that the exemption referred to is not arbitrary but is a reasonable classification made necessary by reason of the fact that this state could not under its present statutes of taxation levy an income tax on national banks and that the exemption is necessary in order that banks organized in Kentucky may compete with national banks. That banks must be treated alike for taxation purposes.

Frankly, I am unable to follow the reasoning of appellee in this contention. A state cannot grant an exemption merely for the purpose of putting a taxpayer on a favorable competitive basis with one not subject to the taxing power of the state. This rule is supported by Union Bank & Trust Co. v. Phelps, 288 U. S. 181, 53 S. Ct. 321, 322, 77 L. Ed. 687, 83 A. L. R. 1438, where the Supreme Court said:

"To accept the doctrine that as the states can only tax a federal instrumentality when permitted by Congress, therefore they cannot tax competitors of such instrumentalities within their general jurisdiction in some other fashion without violating the Fourteenth Amendment, would be both illogical and destructive of their proper independence."

Just what type or kind of tax, within constitutional limits, should be levied upon national banks is a legislative problem. But the doctrine that the determination of that question is ipso facto and in all events determination of the tax to be levied on state banks is unsound. If the Federal Government should decline to permit taxation of national banking associations, could it be seriously contended that that operated to relieve banking corporations chartered by and doing business in Kentucky from taxation? I think not.

In the majority opinion this court undertakes to justify the exemption upon the ground that the present economic conditions demand considerate treatment of banking institutions, and that these institutions perform the function of supporting in a large measure government credit, and that it is the policy of the government to encourage low interest rates and that the matter of taxation has a very vital relationship to interest rates. The majority opinion cites the case of Miles v. Dept. of Treas. (Ind. Sup.) 193 N. E. 855, 97 A. L. R. 1474, as authority for the right of the Legis-

lature to classify banks for different treatment under income tax statutes.

With the greatest deference to my colleagues who have so held, it seems to me that this line of reasoning is forced. It is not even urged by the appellees. There is nothing in this record upon which it might be concluded that the tax levied will so increase the cost of operation of a state bank as to jeopardize its existence, and certainly if that reasoning is sound, it seems to me it could be equally urged that the effect of the tax would be such as to endanger the very existence of numerous other equally legitimate businesses whose margin of profit is equally small. Moreover, while it is true that banks do perform the function at least in part of supporting government credit, it is equally true that income from government securities is nontaxable under this act. The net income which is taxable under this act is at least theoretically the gain from the operation of the business and, therefore, it seems to me that the exemption of this income in the hands of banks could not reasonably be expected to justify reduction of interest rates.

Regarding the case of Miles v. Dept. of Treas., supra, that case did not involve a statute worded like ours. The Indiana act (Acts 1933, c. 50) involved in the Miles Case classified "banks, trust companies, building and loan associations, brokers, finance companies, dealers in commercial paper, and persons engaged in the business of lending money or credit" (section 1 (g) into one class for the purpose of defining "gross income" of those persons subject to tax. That classification is obviously one which, due to the peculiarity of the business engaged in, makes it practical that different methods be used in arriving at income to be taxed; but the Kentucky act simply exempts without reference to the other businesses referred to in the Indiana statute and in the Miles opinion.

The Supreme Court of the United States in the case of Warren v. Shook, 91 U. S. 704, 710, 23 L. Ed. 421, defined "banking" as follows:

"Having a place of business where deposits are received and paid out on checks, and where money is loaned upon security, is the substance of the business of a banker."

This court approved that definition in the case of Mar-

vin v. Kentucky Title Trust Company, 218 Ky. 135, 291 S. W. 17, and I think it is obvious from that definition that the Indiana classification as referred to in the case of Miles v. Dept. of Treas., supra, is a far more accurately bounded classification than is the classification created by the exemption in subsection (3), section 14 of our Income Tax Statute, for it is common knowledge that only a portion of the credit so necessary to our present-day living is extended by either state or national banks, and if the economic conditions of our country are such as to compel or to justify a preferred treatment of this subject, then that treatment should be extended to all engaged in that business.

There is no question, as I see it, but that the exemption of state banks and trust companies from the provisions of the act is a discrimination. While it is certainly true that it is not within province of the judiciary to interfere with the action of the legislative branch in classification of businesses or things for tax purposes, where the discrimination or classification is so unreasonable or capricious or arbitrary as to have no basis in fact and to have no substantial relation to the object of the taxing statute or the thing taxed, it is certainly the duty of the court to decline to permit such a Satute to stand. In this view I am supported by Patton v. Brady, 184 U. S. 608, 22 S. Ct. 493, 46 L. Ed. 713; Colgate v. Harvey, 296 U. S. 404, 56 S. Ct. 252, 80 L. Ed. 299, 102 A. L. R. 54; Hager v. Walker, 128 Ky. 1, 107 S. W. 254, 32 Ky. Law Rep. 748, 15 L. R. A. (N. S.) 195, 129 Am. St. Rep. 238; Williams v. City of Bowling Green, 254 Ky. 11, 70 S. W. (2d) 967.

As authority for the exemption of state banks, appellee has cited Hunton v. Commonwealth, 166 Va. 229, 183 S. E. 873. I have read this case closely, but I do not find there involved the validity of the bank exempting statutes. Likewise Colgate v. Harvey, supra, is cited, but I do not find that decision helpful in the solution of this difficulty.

Even a casual reading of our Constitution demonstrates the fact that exemptions from taxation under it are, or are intended to be, prohibited by it or repugnant to it. Equity and fairness in the distribution of the burdens of government, as well as with regard to its benefits and protection, are at once the goal and the port of society. One of the principle burdens of gov-

ernment is its cost. This is paid by taxation of its citizens, and many of our illustrious statesmen have urged and many of our distinguished jurists upheld income taxation as taxation inherently fair in its nature and most equitably distributing the cost of government in direct proportion to the taxpayers ability to pay; but no matter how fair and equitable a tax may be in theory, the delicacy of its balances are likely to be disturbed through any exemption.

To justify the exemption of a business such as is here involved, namely, state banks, by urging that it will enable them to compete on more favorable terms with business which cannot be taxed or which may not at present be taxed in this state, is to me both illogical and untenable.

The majority opinion further justified the classification by holding that the tax is not levied upon income. There is some basis for this conclusion in certain expressions found in the act, but it seems to me elementary that the tax here is imposed upon income as distinguishable from the imposition of a tax upon persons, corporations measured by income. In Fletcher's Cyclopedia Corporations, sec. 6904 is found the following rule with reference to income taxes:

"These (income taxes) are divisible into (1) franchise taxes measured by income, and (2) taxes imposed on net income by the state or the United States. While both are generally held to be excise taxes rather than property taxes, there is a clear distinction between the former and the latter. A franchise tax, although measured by income, is not an income tax, although such a tax is held in some states to be in effect an income tax. In the one case income is the measure of the tax while in the other case income is the subject of the tax. One is a tax upon the net income of property and the other is a tax on the net income of one who owns or operates it."

I think the tax here is clearly upon income, and if I am right in that conclusion, then under the doctrine of this court as announced in Hager v. Walker, 128 Ky. 1, 107 Ky. 254, 32 Ky. Law Rep. 748, 15 L. R. A. (N. S.) 195, 129 Am. St. Rep. 238, that when the Legislature undertakes to exercise the power it has to impose special or excise taxes, the tax imposed must apply alike to

the subject of the taxation. This doctrine has been followed by our Court of Appeals in an unbroken line of decisions. The tax as I see it is upon income, and I fail to find any substantial difference between $5.000 of income earned by a bank and exempt under the statute and the same amount of income earned by the plaintiff corporation and taxable under the statute. Moreover, and for the same reasons, I am of the opinion that there is no justification for subsection (k) of section 3 of the act which would authorize the deduction of dividends received from stock in state banks and trust companies from income otherwise taxable. In this conclusion I believe I am also supported by the rule announced in 61 Corpus Juris, 1573:

"Dividends are not exempt from taxation as income of the stockholder receiving them by reason of the fact that they represent a distribution of earnings or profits which, as income of the corporation, were not taxable to it, since the income of the corporation and the income of its stockholders are entirely distinct."

Subsection (l) of section 3 authorizes deductions of contributions or gifts made by individuals for the use of the state, and for what may be stated as educational, religious, literary, and military purposes. Just why such contributions should be subjects of deductions when made by individuals, as distinguished from such contributions when made by corporations, it seems to me is unexplainable, as is likewise the provision of this section which authorizes such deductions only when the contributions or gifts are used exclusively in Kentucky. This section as written would deny a deduction for a contribution to such charity as the American Red Cross, or any church or religious society supporting either charities or religious works outside the bounds of Kentucky, or even a contribution made by a public-spirited citizen to the Federal Government for scientific or charitable purposes. It would deny the deduction of a gift made by an alumnus of Harvard University to his university, and yet permit the deduction of a contribution or gift made by an alumnus of one of our state institutions to that institution.

Section 3 (c) of the act provides for the deductions of taxes. This authorizes deduction only of such taxes as are paid to the state, its political subdivisions, and income taxes paid to the Federal Government. A situa-

tion is thereby created whereby, although the state may tax income arising from property beyond its confines, the state does not permit the deduction of taxes necessarily paid in earning such income. A situation might easily be conceived where there is considerable gross income but no net income after the payment of taxes, required to be paid but not subject to deduction. Then, too, license taxes are paid to other states by corporations and individuals engaged in business there. The payment of these is absolutely necessary in order to earn the income taxed by Kentucky, and they are as properly deductible, it seems to me, as a similar tax paid to this state. A corporation must necessarily pay the Federal Government various taxes such as excise taxes, capital stock taxes, and stamp taxes. A reasonable interpretation and construction of this language would require that stamp taxes and excise taxes paid to the Federal Government are not deductible. Only such taxes as the statute names may be deducted. See State ex rel, Hickox v. Widule, 166 Wis. 113, 163 N. W. 648, and State ex rel. Ford Motor Co. v. Gehner, 325 Mo. 24, 27 S. W. (2d) 1.

Other objections might be urged, but the foregoing will suffice. I am of the opinion that the tax is not a property tax, but is in the nature of an excise tax, and is an income tax which is distinguishable from other classes of taxes under our law; that the act is unconstitutional and void, in that it arbitrarily and unreasonably grants exemption by its provisions to state banks and trust companies, thereby discriminating without basis, reason, or cause in their favor. If it were possible to expunge from the act the section giving rise to this exemption and the section authorizing the deduction of dividends paid on the stock of state banks and trust companies, the remainder of the act might be saved, but such construction is impossible in view of the rule of this court followed in the case of Board of Education of Woodford County v. Board of Education, 264 Ky. 245, 94 S. W. (2d) 687, and in my opinion the act is so destroyed by its obviously unconstitutional provisions that it is no presumption that the Legislature would have passed the act without the unconstitutional features, and I must so hold.